IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00552-CMA-NRN

CURTIS PARK GROUP, LLC,

Plaintiff,

v.

ALLIED WORLD SPECIALTY INSURANCE COMPANY

Defendants.

---

**ORDER ON DEFENDANT'S MOTION TO COMPEL [DKT #85]
AND NON-PARTY MILENDER WHITE RESIDENTIAL'S
MOTION TO QUASH SUBPOENA [DKT. #95]**

---

This matter came before the Court on March 12, 2021 for argument on Defendant Allied World Specialty Insurance Company's ("Allied World") Motion to Compel Compliance of Subpoena to the Vertex Companies, Inc. ("Vertex") (Dkt. #85), and Non-Party Milender White Residential LLC's ("Milender White") Motion to Quash Subpoena Served on its Consulting Expert, the Vertex Companies, Inc. Dkt. #95. The two motions mirror each other and address the same subject matter.

Defendant Allied World seeks to compel production of written analysis and other documents from Vertex, an engineering company hired by third-party Milender White. Milender White, for its part, asserts that Vertex was hired as a consultant in anticipation of litigation and the material which Defendant seeks to compel from Vertex is covered both by the attorney-client privilege and by the privilege reflected in Rule 26(b)(4)(D)— as "facts known or opinions held by an expert who has been retained or specially

employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."

As background, this is an insurance coverage case arising from a Builders' Risk insurance policy issued by Allied World covering construction of a condominium project. Plaintiff Curtis Park owns and is the developer of the condominium project. Non-Party Milender White acted as the Curtis Park's general contractor on the project. The condominium project had a concrete slab that experienced deflection and cracking. Curtis Park has sued Allied World seeking coverage for its losses. In preparing to submit its insurance claim to Allied World arising out of the issue with the concrete slab, Curtis Park and its counsel, along with Curtis Park's insurance broker, sought and received information from Milender White, and those parties shared draft documents back and forth before the claim was finalized and submitted to Allied World.

Vertex is an engineering company that is involved in this case in two different ways. First, in support of its underlying claim to Defendant Allied World, Curtis Park submitted its claim narrative and supporting documentation outlining the investigation into the cause and potential solutions to fix the excess slab deflection at issue in this action. Within that claim narrative was information reflecting Vertex's involvement with the project. Vertex had been hired by Milender White to provide "3rd Party Structural Engineering oversight and input on the data collected by the various investigative entities as well as peer review of the initial design provided by the Structural Engineer of Record (KL&A)." Dkt. #85-3. Milender White agrees that this was the case but adds that Vertex was hired as a consulting expert after the slab deflection occurred to assist in the investigation into the cause of the collapse and to comment on proposed solutions. Per

2

the affidavit of Darren Hinton, Construction Executive and Senior Vice President with Milender White:

> In late December 2017, unexpected deflection was discovered in the concrete deck slab (the "Slab Defection" about the parking garage of the Project. Following that discovery, I worked with representatives of the Project's owner, Curtis Park Group, LLC ("Curtis Park") to investigate the Slab Deflection to assess the property damage and determine the cause.
>
> In connection with that investigation, and in anticipation of litigation over the damage caused by the Slab Deflection, Milender White's counsel engaged a third-party engineering consultant, The Vertex Companies, Inc. ("Vertex"), to act as a non-testifying consulting expert.
>
> Vertex analyzed and interpreted data collected during the investigation into the cause of the Slab Deflection to help Milender White and its counsel determine whether the damage was the fault of any party involved in construction, or whether it was due to some other cause.
>
> Vertex's analysis was kept confidential, and any communications regarding its legal implications were restricted to Milender White, Curtis Park, and their respective counsel.
>
> Ultimately, Vertex's analysis helped lead to the conclusion that the Slab Deflection was not caused by any defect in the construction process.

Affidavit of Darren Hinton. Dkt. #95-8. Milender White concedes that Vertex's analysis reflects or was part of the basis for the "driving theory behind this lawsuit, i.e., that Allied World denied Curtis Park's insurance claim in bad faith and *inter alia* relied upon incorrect conclusions not supported by fact when it concluded the damages was caused by defective work." Dkt. #95 at 13. As part of its claim to Allied World, Curtis Park submitted the costs associated with Vertex's work. *See* Dkt. #85-4 at 3 (reflecting claim for $11,655.00 for "Vertex—Engineering peer review"). *See also* Dkt. #85-5 (detailed invoices reflecting Vertex's engineering services for Milender White).

Beyond Milender Whites's retention of Vertex prior to the submission of the claim and the filing of any lawsuit, Curtis Park also retained a separate group within Vertex to

3

serve as its testifying expert on construction costs and owner included costs. The instant motions to quash and compel relate only to Vertex's project file and documentation created during its engagement by Milender White, not Vertex's file and documentation related to its subsequent retention by Curtis Park as a testifying expert.

### The Documents at Issue

Allied World seeks via subpoena from Vertex, among other things, its "entire and complete physical file and electronically stored information concerning" Vertex's involvement on the condominium project, including correspondence, notes, reports, and documents related to "results of investigations and testing associated in any way to the investigation and/or determination of the cause of the excess downward deflection of the elevated concrete slab/podium deck located at the Project." Dkt. #95-1 at 5 (subpoena).

### Allied World's Arguments to Compel and Milender White's Objections

Allied World argues that Vertex was heavily involved in the analysis and oversight of the repairs for the defective concrete slab, which is at the center of this litigation. The requested documents are indisputably relevant to the dispute about what caused the slab deflection. Vertex conducted analysis and oversight of the repairs and continued to conduct peer reviews throughout the duration of the project. Vertex's invoices and associated costs were submitted as part of the insurance claim to Allied World, seeking reimbursement for services Vertex performed on the project.

Allied World first argues that Vertex waived any objections because it did not comply with the terms of F.R.C.P. 45 which requires any written objections to be served before the earlier of the time specified for compliance or 14 days after the subpoena is

served. Vertex did not provide any written objections, nor did it communicate its intention to disregard the subpoena. Instead, it was Milender White who notified Allied World's counsel of Milender White's objections to the subpoena, claiming an ownership interest in the requested documents and the existence of the consulting privilege between Milender White and Vertex. But Milender White also failed to file a motion to quash or modify the subpoena, despite its objections concerning the disclosure of privileged matter, until after Allied World filed its Motion to Compel. *See* Rule 45(d)(3)(A).

As to the consulting privilege, Allied World insists that per the terms of Rule 26(b)(4)(D), Milender White cannot raise the consulting privilege due to its status as a non-party to the case. *See* Dkt. #85 at 4-5 (citing *Arkansas River Power Authority v. The Babcock & Wilcox Company*, 310 F.R.D. 492, 497-498 (D. Colo. 2015)).

Finally, Allied World disagrees that the attorney-client or work product privileges apply. In Allied World's view, these requested documents are not attorney-driven work product created in anticipation of litigation. The material in question was, instead, material created by Vertex as a peer reviewer for the project.

For its part, Milender White makes several objections in its Motion to Quash. First, it insists that it has a legitimate proprietary interest in objecting to the subpoena because it paid for and owns all of Vertex's work product with respect to the project.

Second, Milender White asserts that it has, from its own files, already produced much of what is being requested by Allied World in response to an identical subpoena that previously was served on Milender White. Milender White represents that all the underlying data (including test results, photographs, or other raw data) on which Vertex

5

relied to make its analysis has already been produced. The only material that has not been produced consists of Vertex's notes and documents that may reflect or contain Vertex's analysis of the underlying raw data. Milender White essentially argues that with raw data that has already been produced to Allied World, Allied World can make its own analysis and come to its own conclusions using its own experts.

Finally, Milender White claims that the subpoena must be quashed because it seeks privileged information, citing the consulting privilege, the attorney-client privilege, and the work-product doctrine. Milender White says it "relied upon Vertex's engineering expertise to help interpret the data collected during the investigation into the cause of the Slab Deflection. Vertex's expert analysis was used to advise and inform Milender White and Curtis Park in anticipation of a potential dispute over the cause of the damage." Dkt. #95 at 11-12. Milender White cites *Leprino Foods Company v. DCI, Inc.*, 13-cv-02430-RM-KMY, 2014 WL 2922667 (D. Colo. 2014) for proposition that experts engaged to help parties jointly investigate damage and avoid litigation are "consulting experts" under Rule 26.

Milender White also cites my prior decision of November 30, 2020, where I ruled that communications to or from Curtis Park's counsel and Milender White did not waive the Curtis Park's attorney-client or work product privileges because of the need for Curtis Park's counsel to communicate with its general contractor to obtain information in formulating the insurance claim. *See* Dkt. #64 at 8 ("The Court sees no reason draw a bright line between Curtis Park and its general contractor, Milender White, and deem any of those communications to have waived the attorney-client privilege."). Milender White thus argues that the attorney-client and consultant privileges should extend

6

beyond the actual party in the case, Allied World, to encompass Milender White and anyone Milender White may have hired to investigate the slab deflection. *See* Dkt. #95 at 12 n. 4 (citing *GSL Group, Inc. v. Travelers Indem. Co.*, 18-cv-00746-MSK-SKC, 2020 WL 4282291 at *6-8 (D. Colo. July 24, 2020) (third party who identified property damage, identified necessary repairs and costs, and helped pursue claim against insurer on plaintiff's behalf did not destroy privilege because he was an "information giver")).

## LEGAL STANDARDS

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Federal courts have held that the scope of discovery under Rule 26 is broad. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir.1995); *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004) ("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve full disclosure of all potentially relevant information."). The federal discovery rules reflect the courts' and Congress' recognition that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). As a result of this policy, subject to proportionality limitations, Rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a case." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 649–650 (D.N.M. 2007).

"Federal Rule of Civil Procedure 26(b)(1) provides for access to all information 'relevant to the subject matter involved in the pending action' unless the information is

privileged. If a privilege exists, information may be withheld, even if relevant to the lawsuit and essential to the establishment of [a] plaintiff's claim." *Baldrige v. Shapiro*, 455 U.S. 345, 360 (1982) (quoting Fed. R. Civ. P. 26(b)(1)); *see also S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190–91 (3d Cir.1994) ("The Rules of Civil Procedure recognize the need for exercise of the privilege. Rule 26(b)(5) provides that claims of privilege may be made to withhold material otherwise subject to discovery."). Because privileges have the effect of withholding relevant information from the finder of fact, they should be narrowly construed. *See Montgomery v. Leftwich, Moore & Douglas*, 161 F.R.D. 224, 225 (D. D.C. 1995).

Fed. R. Civ. P. 45(d)(3)(A)(iii) requires a court to quash or modify a subpoena that: "requires disclosure of privileged or other protected matter, if no exception or waiver applies." *R & D Film 1, LLC v. Does 1–66*, Case No. 13–cv–00433–WYD–MEH, 2013 WL 4052425, at * 1 (D. Colo. Aug. 1, 2013) (noting that no other grounds for quashing a subpoena are listed in the rule). "A party seeking to quash a subpoena duces tecum has a particularly heavy burden as contrasted to a party seeking only limited protection." *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 669 F.2d 620, 623 (10th Cir.1982).

The attorney-client privilege "is established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009). Moreover, "the privilege 'applies only to statements made in circumstances giving rise to a reasonable expectation that the statements will be treated

8

as confidential.'" *Id.* (*quoting Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001)). Thus, in order for the privilege to apply, the communication must both relate to the provision of legal advice and be made confidentially.

The work-product doctrine is governed by a uniform federal standard, *Frontier Refining Inc. v. Gorman–Rupp Company, Inc.*, 136 F.3d 695, 702 n.10 (10th Cir.1998), and is interpreted under both Fed. R. Civ. P. 26(b)(3) and *Hickman. See In re Qwest Commc'ns Intern., Inc.*, 450 F.3d 1179, 1184 n.3, 1186 (10th Cir.2006); *United States v. Deloitte, LLP*, 610 F.3d 129, 136 (D.C.Cir.2010) (*Hickman* provides work-product protection for intangible work product independent of Rule 26(b)(3), which applies only to documents and tangible things). "A document is protected by the work product privilege if it was prepared in anticipation of litigation by another party or that party's representative, and was intended to remain confidential." *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618, 624 (D.Colo.1998).

"The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought . . . [or] upon a showing that there is a privacy interest applicable." *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D.Colo.1997). Further, an objecting party has standing to move to quash a subpoena issued to a nonparty if it "claims some personal right or privilege with regard to the documents sought." *Carbajal v. Serra*, Case No. 10–cv–02862–REB–KLM, 2012 WL 2215677, at *2 (D. Colo. June 15, 2012) (citing 9A WRIGHT, MILLER, KANE, & MARCUS, FED. PRAC. & PROC. CIV. § 2459 (3d ed.)). *See also United States v. Gonzales*, No. 10–cr–00396–CMA, 2010 WL 3853324, at *2 (D. Colo. Sept. 8, 2010) (citation omitted) ("A party only has standing to move to quash

9

the subpoena issued to another when the subpoena infringes upon the movant's legitimate interests.").

The burden is upon Milender White as the sponsor of the motion to quash to show that it has a privacy interest or that some other privilege applies. *Centurion Industries, Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323 (10th Cir.1981).

## DECISION

I come to the following conclusions. First, I do agree that Milender White has the right to object on Vertex's behalf to the subpoena. Milender White says that Vertex was hired by it to assist in the analysis of the failure and Vertex's work product was paid for by Milender White. To the extent that Milender White is arguing that Vertex was its consultant and the documents at issue are covered by the consultant privilege, Milender White is at least entitled to make the argument on behalf of Vertex. *See Leprino Foods*, 2014 WL 2922667, at *4 (*citing Carbajal*, *supra*, for proposition that a party may move to quash a subpoena where the moving party claims some personal right or privilege with respect to the documents sought). Here, Milender White arguably has a proprietary interest in the documents sought and also claims infringement on the attorney-client and consultant privileges. I find that is a sufficient basis to grant Milender White standing to challenge the subpoena. *Malibu Media v. Doe*, Civ. No. 12-cv-02598-REB-MEH, 2013 WL 24526 (D. Colo Jan. 2, 2013) at *2 (explaining that court may quash a subpoena served on a third party based on claim of privilege, personal interest, or proprietary interest).

Second, as stated at oral argument, I do not find that either Milender White or Vertex has waived any objections to the subpoena or waived the right to seek to quash

the subpoena. I find that Milender White attempted to confer in good faith, wrote an appropriate objection letter to Allied World, and filed a Motion to Quash. While the Motion to Quash may have been filed later than would have been ideal, I find that Milender White acted in good faith in objecting and bringing its objections before the Court. *See Premier Election Solutions, Inc. v. SysTest Labs, Inc.*, Civ. No. 09-cv-01822-WDM-KMT, 2009 WL 3075597 at *12-13 (D. Colo. Sept. 22, 2009) (explaining that where a subpoenaed witness is a nonparty acting in good faith, in unusual circumstances and for good cause, the failure to act timely will not bar consideration of objections). Here, Milender White was in repeated contact with Allied World's counsel regarding both the subpoena to Milender White itself and the Vertex subpoena and had fairly communicated its position regarding the allegedly privileged documents. This court's overarching responsibility is to "secure the just . . . determination of every action and proceeding." Fed.R.Civ.P. 1. Further, "when an act may or must be done within a specified time, the court may, for good cause, extend the time . . . after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B).

Therefore, I do find that Milender White has the right to object to the subpeona on Vertex's behalf. But, after considering Milender White's objections and arguments, I reject and overrule those objections and arguments. The Motion to Quash will be denied and the Motion to Compel will be granted.

The basis for my decision is that I am not persuaded that the requested documents are covered by any privilege, whether it be the consultant privilege, the attorney-client privilege, or the work-product privilege/doctrine. The party asserting

11

attorney-client privilege or work-product protection has the burden of clearly showing that either or both apply. *Barclaysamerican Corporation v. Kane*, 746 F.2d 653, 656 (10th Cir.1984); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984). Here, Milender White has not met its burden of showing that any privilege applies.

The sole evidentiary basis for the privilege claims are the one line in Mr. Hinton's affidavit stating in a conclusory manner that "in anticipation of litigation over the damage caused by the Slab Deflection, Milender White's counsel engaged a third-party engineering consultant, [Vertex] to act as a non-testifying consulting expert." Dkt. #95-8 at 2 ¶5. But the reality is that Milender White, as contractor on the project, was going to have to investigate the unexpected slab deflection in any event "to assess the property damage and determine the cause." *Id.* at ¶4.

Based on what I glean from the relatively sparse record, involvement of Milender White's counsel was secondary to the reality that Milender White needed to figure out what had happened with the slab and also needed to monitor the potential fixes for the problem. There is no evidence showing that this was a legal need, rather than a business need. This was part of the business of being a contractor on a project—when something fails, one investigates to determine what has gone wrong and how to fix it. There is no non-conclusory evidence suggesting that this investigation that was primarily or predominately done "in anticipation of litigation." From all appearances, this was part and parcel with Milender White's business as a general contractor that had experienced a serious failure on a project. It had to do an investigation and report to the project owner—Curtis Park.

The claim narrative description of Vertex's work confirms that this was the case – describing Vertex's work as "3rd Party Structural Engineering oversight and input on the data collected by the various investigative entities as well as peer review of the initial design provided by the Structural Engineer of Record (KL&A)." I conclude that Vertex's contracted work for Milender White (which did not have in-house engineering resources), was part of Milender White's business activity, rather than an investigation or communication for the purpose of giving or receiving legal advice. Milender White cannot cloak with privilege conduct and communications that necessarily and normally would have occurred in the context of its non-legal business operations. To this extent, Milender White's effort to assert privilege over the Vertex documents is similar to an insurance company that uses an attorney to investigate a claim. Just because a lawyer did it, does not mean it is necessarily privileged. Communications with the lawyer are only privileged if they are for the purpose of giving or receiving legal advice, not if they are part of the insurance company's normal business of adjusting a claim. *See generally*, *Menapce v. Alaska National Ins. Company*, 20-cv-00053-REB-STV, 2020-WL 6119962 (D. Colo. Oct. 15, 2020) (providing a detailed and comprehensive overview of the privilege and work-product considerations under Colorado law when a lawyer is involved in adjusting an insurance claim); *see also* Dkt. #63 at 12-13 (Order of Nov. 30, 2020 holding that communications between Nelson Forensics and JS Held on the one hand, and counsel for Allied World on the other, were not work product or otherwise privileged because they were part of the insurer's adjustment function).

Outside of the insurance context, courts in this District considering privilege questions arising from communications that have both a legal and business purpose

13

have looked to see whether the legal purpose was the "dominate purpose" or "predominate[d]" over the business purpose or instead whether the legal purpose was "merely incidental" to the business purpose. *See, e.g., RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-CV-1301-PAB-GPG, 2018 WL 3055774, at *3 (D. Colo. May 23, 2018) (holding that "[w]here business and legal advice are intertwined, the legal advice must predominate for the communication to be protected" and "[w]hen the legal advice is merely incidental to business advice, the privilege does not apply" (quotations omitted)); *Bonanno v. The Quizno's Franchise Co., LLC*, No. 06-CV-02358-WYD-KLM, 2008 WL 1801173, at *3 (D. Colo. Apr. 18, 2008) (finding that "the 'dominant purpose' of many of the communications appears to have been to provide legal advice and strategy to the corporation, although business advice and strategy [we]re also incorporated"). Nothing presented to me suggests that the dominant purpose of hiring Vertex was for obtaining legal advice or developing a legal strategy for Milender White.

On the issue of the consultant privilege, I do not believe that Milender White, which is a non-party to this case, may withhold the relevant subpoenaed documents based on Rule 26(b)(4)(D). While aot a party to this case, Milender White apparently seeks, by some transitive property, to assert the consultant or "non-testifying expert" privilege to cover the hiring of its own consulting expert because it was the general contractor to a party, Curtis Park. I do not think that the consultant privilege extends so far.

First, as noted above, I am not persuaded that Vertex's hiring was for a legal purpose of educating Milender White in anticipation of litigation. But second, and more

14

important, the law in this District appears to be that the consultant or "non-testifying expert" privilege rule reflected in Rule 26(b)(4)(D) may only be invoked by a party to the litigation. By its very terms, the Rule protects from discovery only the "facts known or opinions held by an expert *who has been retained or specially employed by another party in anticipation of litigation* or to prepare for trial who is not expected to be called as a witness at trial." (emphasis added). "The rule is designed to promote fairness by precluding unreasonable access to an *opposing party's* diligent trial preparation." *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984) (emphasis added). In keeping with this underlying policy, courts have "not allowed parties to discovery factual knowledge and opinions possessed by an opposing party's consultative experts where the experts acquired information (1) through their employment with the opposing party and (2) in anticipation of the underlying litigation." *Rocky Mountain Natural Gas Co. v. Industrial Mechanics, Inc.*, 166 F.R.D. 481, 482 (D. Colo. 1996).

By contrast, where an expert was hired by a non-party, before litigation was filed, Rule 26(b)(4)(D) has been held not to apply. *See Arkansas River Power Authority v. The Babcock and Wilcox Company*, 310 F.R.D. 492, 497-498 (D. Colo. 2015) (noting that the objecting non-party had not cited, "and the court has not found, any case in which a non-party has been permitted to invoke Rule 26(b)(4)(D) in a case where it is not a party"). Judge Wang's decision in *Arkansas River Power* is applicable here. I do not find that the rule may be invoked by Vertex or Milender White to prevent discovery of Vertex's analysis of the cause of the slab defection.

One might consider this decision to be inconsistent with some of my prior discovery decisions in this case. *See* Dkt. #46 (Order of 9/9/2020, holding that the

15

underlying notes and other materials of Dr. Harris, Curtis Park's own retained engineering expert, are covered by the work product privilege and should not be produced) and Dkt. #64 (Order of 11/30/2020, holding that Curtis Park did not waive the attorney-client privilege when its counsel communicated with IMA and/or Milender White).

There is no inconsistency in these decisions. First, Dr. Harris was a non-testifying consultant, hired by counsel for Curtis Park, a party in this case, for the purpose formulating the claim to the insurance company. Milender White is not a party. Milender White has its own pressing business reasons for determining the cause of the slab deflection and monitoring the process of fixing the cracked slab.

Second, with respect to Dkt. #64, the decision that permitted Curtis Park's counsel to communicate with Milender White as Curtis Park's contractor without waiving privilege, that decision was limited only to communications that contained or requested legal advice and did not apply to purely factual information. *See* Dkt. #64 at 10-11. Here, there is no suggestion that Vertex was communicating with Milender White or Curtis Park's legal counsel. As far as I can tell from the limited information containing the briefing, I have no reason to think that Vertex's notes, analyses and conclusions are anything other than factual, as opposed to legal in nature.

The overriding and consistent principle underlying these decisions is that the discovery process, and ultimately the trial (if it comes to that), are intended to be a part of a search for truth. *See Hickman v. Taylor*, 329 U.S. 495, 501 (1947) ("Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible

16

knowledge of the issues and facts before trial."). Privileges against forced disclosure, are "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974).

Here, the critical factual questions in this case are (1) what caused the slab deflection and (2) whether that cause is excluded from insurance coverage. The Vertex analysis and documents are clearly relevant. The Vertex analysis was cited as a basis for the Curtis Park claim. Milender White has not met its burden of showing that there exists any valid privilege that would justify withholding these relevant subpoenaed documents.

## CONCLUSION

It is hereby **ORDERED** that Defendant Allied World's Motion to Compel [Dkt. #85] is **GRANTED** to the extent that Vertex (or Milender White) has withheld any additional material that has not previously been produced by Milender White; it is further

**ORDERED** that Non-Party Milender White's Motion to Quash [Dkt. #95] is **DENIED**.

Dated:   March 17, 2021

BY THE COURT

*N. Reid Neureiter*

N. Reid Neureiter
United States Magistrate Judge

17