IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00552-CMA-NRN

CURTIS PARK GROUP, LLC,

Plaintiff,

v.

ALLIED WORLD SPECIALTY INSURANCE COMPANY

Defendants.

---

**ORDER ON DEFENDANT'S OBJECTION TO THE SPECIAL MASTER'S ORDER RE DEPOSITION OF DEFENSE COUNSEL RYAN YATES (DKT. #143)**

---

This matter is before the Court on Allied World Specialty Insurance Company (Allied World's) Objection to the Special Master's Order re Deposition of Defense Counsel Ryan Yates (Dkt. #143), referred to me by Judge Christine M. Arguello on August 10, 2021. (Dkt. #145.) Interested Party Ryan Yates joins in the Objection. (Dkt. #144.)

## BACKGROUND

The Court has previously provided the factual background of this case (*see* Dkt. #46) and will not repeat it here except as necessary. This is an insurance coverage case arising from a Builders' Risk insurance policy covering the construction of a condominium project being built by the Curtis Park Group, LLC ("Curtis Park"). The condominium project had a concrete slab that experienced deflection and cracking. Curtis Park made an insurance claim with the defendant insurer, Allied World. Allied World contends that the deflection was caused by a construction defect, and thus

excluded from coverage. Curtis Park sued Allied World for denying coverage. It argues that Allied World has failed to explain the nexus between the construction defect and the deflection. Curtis Park also contends that is it is hampered by the fact that Allied World claims it based its coverage denial on the findings of Nelson Forensics ("Nelson"), the engineering company that Allied World consulted with to investigate the deflection, but Nelson did not prepare a written report explaining how a construction defect caused the deflection. Instead, Nelson instead communicated its findings to the insurer only orally—and the insurer based its denial on those oral communications.

Ryan Yates from the Yates Law Firm was coverage counsel and played an active role in investigating the deflection. He is also defending this case on behalf of Allied World. The present dispute raises the question of whether the Special Master correctly held that Curtis Park could depose Mr. Yates as to certain non-privileged topics. As the Special Master noted, the "issue of discovery concerning [Mr. Yates], counsel for [Allied World], has been addressed throughout this case." (Dkt. #136 at 1.) Previously, on November 30, 2020, I found that Mr. Yates initially was performing the functions that a claims adjuster would perform. He was "involved in coordinating the claim adjustment process, and was facilitating communication between the adjusters and the retained investigating experts." (Dkt. #63 at 14–15.) Thus, I held that "many of [Mr. Yates'] communications are necessarily the ordinary business records of the insurance company." (*Id.*) As such, those written communications were not entitled to protection under the attorney-client privilege or the work product doctrine.

On March 12, 2021, the Special Master held a status conference where the parties raised the issue of whether Mr. Yates could be deposed. In his March 16, 2021

2

Order, and consistent with my finding that Mr. Yates acted in a non-privileged role as claim adjuster for Allied World, the Special Master ruled that Curtis Park could notice Mr. Yates' deposition, but also stated that Allied World could move for a protective order if it thought "grounds still exist for not proceeding with the deposition." (Dkt. 102 at 5.)

Curtis Park noticed the deposition of Mr. Yates and, on June 30, 2021, Allied World moved for a protective order to quash the deposition. (Dkt. #125.) Curtis Park responded (Dkt. #130) and Allied World replied. (Dkt. #133.)

On July 20, 2021, the Special Master issued his ruling granting in part and denying in part Allied World's motion for a protective order. (Dkt. #136.) He declined to quash the deposition notice but held that the questioning at the deposition will be limited to "1) communications among [Nelson], the Yates Law Firm and/or Allied [World] regarding Nelson's investigation of the claim and 2) Mr. Yates' role in drafting the reservation of rights letter." (*Id.* at 8–9.)

Allied World objected to the Special Master's Ruling on August 10, 2021, arguing that the Special Master improperly applied the laws limiting depositions of opposing counsel. (Dkt. #143.) Mr. Yates personally joined in Allied World's Objection. (Dkt. #144.) The Federal Rules of Civil Procedure do not appear to contemplate a response to the objection of or its timing, so Curtis Park filed an unopposed motion requesting a date certain to respond to the Objection. (Dkt. #154.) The Court granted the motion and set Curtis Park's response deadline on August 31, 2021 (Dkt. #156.) The Court also ordered that no reply brief was permitted. (*Id.*)

The Court heard argument from the parties[1] on September 9, 2019. (*See* Dkt. #161.) During the hearing, the Court granted Mr. Yates leave to file a reply in support of the Objection no later than September 15, 2021. (Dkt. #161). Mr. Yates timely submitted a reply (Dkt. #162) and Allied World joined in the reply. (Dkt. #163.)

## DISCUSSION

### A. The Special Master's Legal Conclusions Are Reviewed De Novo; His Factual Findings Are Final.

The parties agree, and there can be no dispute, that objections to a special master's *conclusions of law* are reviewed de novo. Fed. R. Civ. P. 53(f)(4). However, the Special Master's factual findings are not reviewable because the parties, with the court's approval, stipulated that the findings of the Special Master would be final. Fed. R. Civ. P. 53(f)(3)(B). The Order Appointing David M. Tenner as Special Master (the "Order of Appointment") provides, "[i]n reviewing the actions of the Special Master, the parties will be deemed to have stipulated that findings of fact made by the Special Master will be final, except for a party who objects to this portion of the Order, in writing and filed with the Court, within 7 days of the date of this Order." (Dkt. #83 at 3, ¶ 5.) No party objected to this provision of the Order of Appointment. Therefore, I will not disturb the Special Master's findings of fact.

I note that, at oral argument, Allied World suggested that its failure to object to ¶ 5 of the Order of Appointment cannot, by itself, constitute agreement that all factual findings by the Special Master are binding. Citing *Rembert v. Apfel*, 213 F.3d 1331,

---

[1] Ryan Yates is represented by Mr. Robert Baldwin (*see* Dkt. #132) and, as previously noted, joined in Allied World's Objection. (Dkt. 144.) At oral argument, Mr. Baldwin argued the merits of Allied World's Objection. For purposes of this Order, I attribute his argument to Allied World.

4

1333–34 (11th Cir. 2000), and *McNab v. J & J Marine, Inc.*, 240 P.3d 1326, 1328 (11th Cir. 2001), Allied World analogized the present circumstances to consenting to a magistrate judge's jurisdiction and argued that some kind of affirmative assent would be required to bind the parties to the factual findings of the Special Master. Simply failing to timely object, according to Allied World, is insufficient to bind it to the language in the Order of Appointment.

In *Rembert*, the district court clerk for the United States District Court for the District of Alabama issued a "Notice of Assignment to United States Magistrate Judge for Trial." 213 F.3d at 1333. The notice stated that, unless the parties requested reassignment to a district judge by returning a form within thirty (30) days of their first appearance, the parties would be deemed to have consented to the trial and disposition of the case by a magistrate judge. *Id.* Neither party sent in the form to request reassignment to a district court judge. *Id.* The district court issued a ruling adverse to plaintiff and she appealed. *Id.* The Court of Appeals may only exercise its appellate jurisdiction if the parties adequately consented to the jurisdiction of the magistrate to issue a final determination, so the Eleventh Circuit sua sponte inquired into the parties' consent. *Id.*; *see also* 28 U.S.C. § 636(c)(3). The Eleventh Circuit found that the parties had not consented to the magistrate judge's jurisdiction and declined to exercise appellate jurisdiction because "consent to final disposition by a magistrate cannot be obtained through a procedure inviting consent through inaction." *Rembert*, 213 F.3d at 1335. Under *Rembert*, consent must be "express and on the record." *Id.*[2]

---

[2] I pause to note that, in this District, if the parties do not timely file a consent form, the case is reassigned to a district judge.

Similarly, in *McNab,* the Eleventh Circuit found that it lacked jurisdiction to consider an appeal from a magistrate judge's ruling because the parties never affirmatively consented to the magistrate judge's jurisdiction to enter a final judgment—instead, they simply failed to object after receiving notice that the case had been assigned to a magistrate judge. 240 F.3d at 1328.

First, I do not find the consent to a magistrate judge analogous to stipulating that the Special Master's findings of facts are final. The Federal Magistrate Act provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1). Voluntary consent is a prerequisite to the magistrate's jurisdiction. If the parties do not consent to the exercise of a magistrate judge, the matter is reassigned to an Article III judge, and the magistrate judge may not issue final orders in the case.

By contrast, a party's objection or non-consent to a Special Master appointed under Rule 53(a)(1)(C) (the rule under which Mr. Tenner was appointed) does not create a jurisdictional defect that deprives the Special Master of authority to act. Of course, Allied World does not suggest that the Special Master lacks jurisdiction. Instead, it argues that failing to object to the language in the Court's Order of Appointment concerning the finality of factual findings cannot be interpreted as an agreement to be bound by the factual findings, just as failure to object to assignment of magistrate judge cannot amount to consent. This is a non-sequitur. It is the Court's prerogative to appoint the special master and define the scope of his authority to address pre- and post-trial

6

matters. Fed. R. Civ. P. 53(a)(1)(C), 53(b)(2)(A). Further, Rule 53(b)(2) expressly permits me to issue an order stating the "standards for reviewing the master's orders, findings, and recommendations." Court orders should be read carefully. Allied World was on notice that if it did not want to stipulate that the Special Master's findings were final, it needed to object within seven days of receiving the Order of Appointment. Allied World objected more than six months later, and only after it received adverse factual findings. This is too late.

Second, even if appointment of a Special Master had some similarity to the consent of the parties to the jurisdiction of a magistrate judge, the Supreme Court no longer requires express written consent to a magistrate judge's jurisdiction in a civil matter. *See Roell v. Withrow*, 538 U.S. 580, 581 (2003). In *Roell,* the Supreme Court held that parties can impliedly consent to a magistrate judge's jurisdiction where the "litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the [m]agistrate [j]udge." The Eleventh Circuit expressly recognized that the Supreme Court's ruling in *Roell* abrogated its holding in *Rembert*:

> Although we have required that consent to a magistrate judge's jurisdiction be "'express and on the record," *Rembert v. Apfel*, 213 F.3d 1331, 1334 (11th Cir. 2000), the Supreme Court held in *Roell v. Withrow*, 538 U.S. 580, 123 S. Ct. 1696, 155 L. Ed. 2d 775 (2003), that consent to a magistrate judge's jurisdiction can be inferred from a party's conduct during litigation."

*Chambless v. Louisiana-Pac. Corp.*, 481 F.3d 1345 (11th Cir. 2007). The *Roell* decision renders Allied World's analogy even less persuasive.

### B. The Special Master Applied the Correct Legal Standard.

In analyzing whether Mr. Yates could be deposed, the Special Master properly

7

applied the three-part test the adopted by the Tenth Circuit in *Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir. 1995). Under this standard, "depositions of opposing counsel should be limited to where the party seeking to take the deposition has shown that: (1) no other means exist to obtain the information other than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.* at 829 (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)); *see also Kovacs v. Hershey Co.*, No. 04-cv-1881-WYD-BNB, 2006 WL 2781591, at *3 (D. Colo. Sept. 26, 2006) (finding that magistrate judge did not err in applying *Boughton* standard to determine that defendant's counsel could be deposed).

Allied World, however, contends that *Williams v. District Court*, 700 P.2d 549, 555 (Colo. 1985) governs whether Mr. Yates can be compelled to testify. According to Allied World, *Williams* requires that the Court or, in this case, the Special Master, only permit the deposition of an attorney where: (1) the attorney's testimony will actually be adverse to his client; (2) the attorney's testimony will likely be admissible at trial; and (3) there's a compelling need for such evidence, which can't be satisfied by another source. *Id.* at 555. Applying this standard, Allied World argues that the Special Master improperly speculated that Mr. Yates' testimony would be adverse to his client, instead of requiring a showing of actual adverse testimony; that the testimony will not be admissible at trial; and that there is no compelling need for the evidence. At oral argument, Allied World argued that the *Williams* and *Boughton* standards were very similar, except that *Williams* requires the party seeking opposing counsel's deposition must show that the testimony will be adverse.

I find that *Boughton* governs this case. *Williams* is inapplicable, particularly with respect to the adversity requirement. *Williams* was decided in the criminal context and not, as Curtis Park notes, in the fact-gathering context in a civil case. Indeed, the *Williams* court explained that the practice of the prosecution seeking to depose defense counsel poses a "serious risk" to the "integrity of the lawyer-client relationship in the administration of criminal justice," and "[d]efense counsel . . . must not be inhibited in his ability to vigorously investigate the factual circumstances of the case without fear that he may inadvertently be gathering evidence for use against his client." *Id.* at 549. Though some risk still exists in the civil context, those risks are simply not as potent in a civil matter where there is no loss of liberty at stake. Further, in this civil case, I have already ruled that Allied World's counsel acted in a non-privileged capacity doing claims adjuster-type tasks and that the information he learned in that capacity is subject to discovery. Additionally, *Williams* was decided ten years before the Tenth Circuit articulated the test in *Boughton*. Therefore, the Special Master correctly relied on *Boughton* to evaluate whether Mr. Yates could be deposed as to certain topics. His ruling is not contrary to law on this issue. *Kovacs*, 2006 WL 2781591, at *3; *see also Robinson v. Charter Oak Fire Ins. Co.,* No. 20-cv-01534-PAB-MEH, 2021 WL 1753468, at *1 (D. Colo. Mar. 22, 2021) (applying *Boughton* but disallowing deposition of defense counsel where other sources of information existed and information was not crucial).

Allied World also argues that requiring Mr. Yates to testify is tantamount to a motion for disqualification. I disagree. The question of whether Mr. Yates' testimony is adverse to his client and whether his testimony would be critical at trial are separate questions entirely from whether he can be deposed. It is premature to consider

9

disqualification at this stage. The parties and the Court do not know at this time whether Mr. Yates' testimony would be adverse to his client, and the potential adversity cannot be determined until after Mr. Yates is deposed. *See Bishelli v. State Farm Mu. Auto. Ins. Co.*, 2008 WL 1777373, *1 (D. Colo. April 14, 2008) (permitting deposition and noting the potential for adverse effects on a client, "particularly if the testimony reveals that the attorney must withdraw as counsel under the rules of professional conduct."). Any issues related to disqualification are more appropriately addressed at a later date.

C. **The Special Master Correctly Concluded that Mr. Yates Can Be Deposed on Certain Topics.**

As previously noted, I have already found that Mr. Yates has information that is relevant and non-privileged related to his role in assisting Allied World to adjust the Curtis Park claim, thus satisfying the second factor in the *Boughton* analysis. This holding is not novel. As my colleague, Magistrate Judge Wang explained:

> "Not every document drafted by counsel or every communication with counsel is protected by the attorney-client privilege." *Hurtado v. Passmore & Sons, L.L.C.*, No. 10–cv–00625–MSK–KLM, 2011 WL 2533698, at *4 (D. Colo. June 27, 2011) (citing *Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Court For City & Cty. of Denver*, 718 P.2d 1044, 1049 (Colo. 1986) [hereinafter Nat'l Farmers Union]). "For example, the attorney-client privilege does not protect the results of a factual investigation conducted by counsel relating to the origination of an insurance policy and the validity of a claim." *Colo. Mills, LLC v. Philadelphia Indem. Ins. Co.*, No. 12–cv–01830–CMA–MEH, 2013 WL 1340649, at *3 (D. Colo. Apr. 2, 2013) (citing Nat'l Farmers Union, 718 P.2d at 1048–49); accord *Cornhusker Cas. Co. v. Skaj*, No. 11–cv–110–S, 2012 WL 12541136, at *2 (D. Wyo. Apr. 5, 2012) (holding the work product doctrine did not protect disclosure of the insurer's investigative file, because doing so "would allow an insurance company to insulate all investigative materials generated in every case involving serious injuries long before any coverage decisions are made or threats of litigation arise."). Indeed, "if a lawyer is acting in an investigative capacity, and not as a legal counselor, with reference to whether an insurance claim should be paid, then neither the [attorney-client] privilege . . . nor the work product privilege protects communications from a lawyer to an insurance carrier." *Munoz v. State Farm Mut. Auto. Ins. Co.*, 968 P.2d 126, 130 (Colo. App.

1998) (citing *Nat'l Farmers Union*, 718 P.2d at 1044); *accord Smith v. Marten Transp., Ltd.*, No. 10–cv–0293–WYD–KMT, 2010 WL 5313537, at *2–4 (D. Colo. Dec. 17, 2010) (holding the neither the attorney-client privilege nor work product doctrine applied to communications by an attorney acting as a claims investigator regarding a claim investigation or communications with a witness).

*Church Mut. Ins. Co. v. Coutu*, No. 17-CV-00209-RM-NYW, 2018 WL 2388555, at *4 (D. Colo. May 25, 2018). In *Coutu*, Judge Wang permitted the deposition of an insurer's attorney concerning communications between the attorney and a representative of the insurer concerning the attorney's supervision and handling of the appraisal process. *Id.* at *8.

Because Mr. Yates possesses relevant and non-privileged information, the Special Master needed only to determine whether other means exist to obtain the information known by Mr. Yates and whether the information is crucial for Curtis Park's preparation of this case. I find that the Special Master reached the correct conclusions as to both factors.

### 1. *No other means exist to obtain the information known by Mr. Yates.*

Allied World contends that the information Curtis Park seeks from Mr. Yates is available from other sources, including Allied World's denial, supplemental denial, and reservation of rights letters, as well as the deposition testimony concerning communications with Nelson. (*See* Dkt. #143 at 6–10.) Further, Allied World suggests, to the extent the Special Master found that witnesses testifying as to the communications among Nelson, the Yates Law Firm, and Allied World were unable to recall the substance of those communications, such findings were incorrect. (*Id.* at 9.)

The Special Master performed an extensive review of the discovery responses

11

and deposition transcripts in this case. In doing so, he found that, contrary to Allied World's assertions, Curtis Park had already obtained information about what was reviewed or considered by Allied World or its adjusting team during Allied World's investigation of the claim. (Dkt. #136 at 3–6.) The Special Master thus denied Curtis Park's request for Mr. Yates to be deposed on this topic.

However, the Special Master found that no other means exist to obtain information about 1) the communications among Nelson, the Yates Law Firm and/or Allied World regarding Nelson's investigation of the claim and 2) Mr. Yates' role in drafting the reservation of rights letter. (*Id.* at 7–11.) The Special Master explained that the emails Allied World had produced in this matter were insufficient to resolve Curtis Park's inquiry into relevant communications between Allied World, Mr. Yates as adjuster, and Nelson, because many of the communications at issue were made orally and thus not captured by email or formal memorandum. Further, the Special Master found that the witnesses that Curtis Park deposed about the subject communications were unable to recall the substance of those communications.

Allied World objects that the Special Master's conclusion is contrary to the evidence. It argues that Curtis Park already has the substance of the communications and anything else is "immaterial minutia." (Dkt. #143 at 11.) I reject Allied World's arguments and decline the invitation to rehash the evidence. The Special Master's conclusions concerning the sufficiency of discovery thus far and the availability of other sources for the information Curtis Park seeks are factual findings, and they are final. (Dkt. #83 at 3, ¶ 5.)

2. ***The information known by Mr. Yates is crucial to this case.***

The Special Master held that the information known by Mr. Yates, that Curtis Park does not otherwise have access to, is crucial to this case. (Dkt. #136 at 2–3.) He wrote:

> This is an insurance bad faith case. As such, what the insurer knew and when it knew it is crucial to resolving the case. In addition, if the insurer should have known information but didn't, the circumstances surrounding its lack of knowledge is also crucial. It has already been determined that Mr. Yates played a critical role in assembling and distributing this information. Therefore, [Curtis Park] has met its burden of proving that the information known by Mr. Yates is crucial to the preparation of its case.

(*Id.* at 2–3.)

Allied World argues that the Special Master erred in making this finding. According to Allied World, it is *undisputed* (despite Curtis Park's arguments), that there was a construction defect. (*See* Dkt. #143 at 11.) Thus, if there was a construction defect expressly excluded from coverage, Curtis Park's breach of contract claim based on Allied World's denial fails. Necessarily, so does the bad faith claim. (*Id.*) Allied World has filed a motion for summary judgment making this same argument. (*See* Dkt. #131.)[3] Accordingly, if a construction defect exists that necessarily defeats Curtis Park's claims, then nothing Curtis Park learns from Mr. Yates' deposition will have any impact on the merits of this case and is irrelevant.

Curtis Park, for its part, argues that it is important for its bad faith claim to understand what Allied World knew, particularly from Nelson, concerning causation, and when Allied World knew it. Further, Curtis Park needs to understand how Nelson's conclusions were interpreted and put into the denial letter. Because Mr. Yates was

---

[3] Allied World's motion for summary judgment has not been referred to me. It remains pending before Judge Arguello.

13

heavily involved in drafting the denial letter, Curtis Park needs to understand his exact role and whether certain conclusions came directly from Nelson or were, perhaps, misconstrued or overstated by Mr. Yates and put into the denial letter.

I disagree with Allied World's characterization of the issues in this case and find that the information sought is crucial to Curtis Park's case. Even if a construction defect occurred, that, by itself, is not necessarily sufficient to deny coverage. Allied World must explain how it concluded that the construction defect caused the deflection for which Curtis Park now seeks recovery for—it cannot simply declare causation without providing any evidence. Curtis Park has a right to know on what Nelson based (or did not base) its conclusions, what Nelson's conclusions were, how those conclusions were communicated to Allied World, and how Mr. Yates configured this information into the denial letter. The Special Master did not commit any error in this regard.

Perhaps if Nelson had prepared a written report explaining its findings, Mr. Yates and Allied World would not be in this position. Indeed, at oral argument, Mr. Russell Yates (also from the Yates Law Firm and also representing Allied World in this litigation) expressly stated that he had instructed Nelson not to write up a report of its findings until a final determination of coverage. It is not clear to me what purpose was served by instructing the forensic engineer, Nelson, not to put its findings in writing. The person who may be able to shed some light on this is Ryan Yates, and Curtis Park must be permitted to depose him with respect to these facts.

D. **Public Policy Does Not Require a Different Conclusion.**

Finally, I address Allied World's argument that public policy weighs against allowing the deposition of opposing counsel, particularly in the insurance context. Here,

14

Allied World chose to utilize Mr. Yates as coverage counsel, as a key person in the claims investigation process, and as trial counsel. The great weight of Colorado authority demonstrates that information an attorney learns when serving as a claims adjuster is not protected by the attorney-client privilege or the work product doctrine. *See, e.g., Church*, 2018 WL 2388555 at *4 (collecting cases); *Menapace v. Alaska*, No. 20-cv-00053-REB-STV, 2020 WL 6119962 (D. Colo. Oct. 15, 2020) (providing comprehensive explanation of the "numerous decisions applying Colorado law that have considered whether communications are subject to the attorney-client privilege where, as here, the insurer retained an attorney to assist in adjusting an insurance claim").

Further, as Russell Yates stated during oral argument, he expressly instructed Nelson not to put its conclusions in writing. Absent this instruction, there would be a written report explaining Nelson's findings and conclusions and providing insight into how those conclusions were fashioned into the denial letters. This is a situation of Allied World's own creation. Insurers are not discouraged from seeking advice on how to handle a claim. They may certainly do so, and the legal advice they seek is protected. However, an insurer cannot hide non-privileged, relevant information simply by channeling it through an attorney. Thus, insurers must think twice about having an attorney also play a role in the claims adjustment process or leading a factual investigation—a situation insurers have full control over. Otherwise, they run the risk of this happening again, with the attorney's conduct in investigating a claim and coordinating the effort of experts in determining the cause of a loss opening the attorney's conduct to discovery.

**CONCLUSION**

15

In light of the foregoing, I find that the Special Master properly concluded that there is information known only to Mr. Yates concerning 1) the communications among Nelson, the Yates Law Firm and/or Allied World regarding Nelson's investigation of the claim and 2) Mr. Yates' role in drafting the reservation of rights letter is crucial to the case, and that information is crucial to this lawsuit. Thus, Curtis Park's is permitted to depose Mr. Yates on these topics. To the extent privilege issues arise at the deposition, Allied World is not without adequate protection: the Special Master will be available to resolve such issues on a question-by-question basis.

I note that I do not make any determinations as to the admissibility of Mr. Yates' testimony at trial or whether information obtained from Mr. Yates will mandate his disqualification as trial counsel. Such issues are for the trial judge to resolve.

Dated:       September 28, 2021

BY THE COURT

_____
N. Reid Neureiter
United States Magistrate Judge