**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:20-cv-00552-CMA-NRN

CURTIS PARK GROUP, LLC,

      Plaintiff,

v.

ALLIED WORLD SPECIALTY INSURANCE COMPANY,

      Defendant.

---

**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

---

Kathleen Repko
Haynes and Boone, LLP
800 17th Street, NW Suite 500
Washington, DC 20006
Telephone: 202.654.4527
Email: kathleen.repko@haynesboone.com

Ernest Martin, Jr.
Emily Buchanan
Andrew W. Guthrie
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas  75219-7672
Telephone: 214.651.5000
Email: ernest.martin@haynesboone.com
     emily.buchanan@haynesboone.com
     andrew.guthrie@haynesboone.com

ATTORNEYS FOR CURTIS PARK
GROUP, LLC

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.........................................................................................ii

I.      INTRODUCTION .........................................................................................1

II.     ARGUMENT & AUTHORITIES.................................................................. 2

        A.      Legal Standards................................................................................. 3

        B.      Curtis Park's Lodestar Amount. ....................................................... 6

        C.      Evidence of Hours Expended. ......................................................... 6

        D.      Evidence of Hourly Rates. ............................................................. 10

        E.      Adjusting the Lodestar. .................................................................. 12

III.    CONCLUSION............................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biax Corp. v. NVIDIA Corp.*,
   2013 WL 4051908 (D. Colo. Aug. 12, 2013) .........................................................3, 5

*Etherton v. Owners Ins. Co.*,
   82 F. Supp. 3d 1190 (D. Colo. 2015) .............................................................2, 4, 5, 9

*Etherton v. Owners Ins. Co.*,
   829 F.3d 1209 (10th Cir. 2016) ...................................................................................2

*Guarantee Tr. Life Ins. Co. v. Estate of Casper*,
   418 P.3d 1163 (Colo. 2018)...........................................................................................2

*Melssen v. Auto-Owners Ins. Co.*,
   285 P.3d 328 (Colo. App. 2012).................................................................................10

*Ramos v. Lamm*,
   713 F.2d 546 (10th Cir. 1983) .....................................................................................5

*Realtime Adaptive Streaming LLC v. Sling TV LLC*,
   2022 WL 4356897 (D. Colo. Sept. 19, 2022) ...................................................*passim*

*Robinson v. City of Edmond*,
   160 F.3d 1275 (10th Cir. 1998) ...........................................................................3, 4, 9

*Rockhill Ins. Co. v. CFI-Global Fisheries Mgmt.*,
   591 F. Supp. 3d 1020 (D. Colo. 2021) .................................................................3, 4, 9

*US General, LLC v. GuideOne Mut. Ins. Co.*,
   2022 WL 1302360 (D. Colo. Mar. 30, 2022) ....................................................*passim*

*US General, LLC v. GuideOne Mut. Ins. Co.*,
   2022 WL 17576353 (10th Cir. Dec. 12, 2022) .............................................4, 5, 13

**Statutes**

Colo. Rev. Stat. § 10-3-1116 .........................................................................................1, 2

Plaintiff Curtis Park Group, LLC ("Curtis Park") submits this Motion for Attorney's Fees pursuant to Colo. Rev. Stat. § 10-3-1116, the jury's April 4, 2023 verdict (Dkt. 308), Local Civil Rule 54.3, and the procedure discussed on the record at the conclusion of trial on April 4. *See also* Dkt. 49 (agreeing to procedures for attorney's fee motion).

## I.
## INTRODUCTION

The jury's verdict in favor of Curtis Park brought some degree of closure to this case after three-plus years of hard-fought litigation. This has been a complex and sometimes contentious case with good lawyers on every side. It raised complicated questions at the intersection of construction law and insurance coverage, including expert-driven disputes about what caused the concrete slab to sag and caselaw-driven disputes about the line between covered and excluded perils under Allied World's builder's risk policy. The answers to those and other questions made this a high-stakes case for both sides—with millions of dollars in dispute—leading all parties to litigate hard and to invest significant resources into the case, including through the efforts of counsel.

After all that work and seven days of trial, the jury sided with Curtis Park. Among other important findings, the jury concluded that the losses claimed by Curtis Park were not excluded by the "Defects, Errors, and Omissions" exclusion; that Allied World breached the all-risk policy by failing to pay more than $2.5 million in covered benefits; and that Curtis Park did not make any misrepresentation or concealment to void the policy. Dkt. 308. Most importantly for present purposes, the jury also found that Allied World violated Colorado's bad faith statute by unreasonably delaying or denying its payment of insurance benefits. *Id.* at 2.

1

Because of the jury's bad-faith finding, Curtis Park is entitled by statute to a judgment awarding it reasonable attorney's fees along with various other elements of damages. Colo. Rev. Stat. § 10-3-1116(1).[1] The award of attorney's fees is mandatory; the only open item for the Court is to find the amount of reasonable attorney's fees that should be awarded. For the reasons described below and in the supporting attachments, Curtis Park asks the Court to award it $2,767,438 for the attorney's fees that it reasonably and necessarily incurred to prevail through trial, in addition to the attorney's fees it has and will reasonably incur in briefing this and other post-trial motions.

## II.
## ARGUMENT & AUTHORITIES

There should be no dispute that Curtis Park is entitled to recover attorney's fees after prevailing on its claim for statutory bad faith. Under Colo. Rev. Stat. § 10-3-1116(1), "[a] first-party claimant…whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." The Colorado Supreme Court has held "that the award of attorney fees and court costs in such a claim *is not discretionary*." *Guarantee Tr. Life Ins. Co. v. Estate of Casper*, 418 P.3d 1163, 1172 (Colo. 2018) (emphasis added). So, the Court's task is simply to determine the proper amount of recoverable fees. *See Etherton v. Owners Ins. Co.*, 82 F. Supp. 3d 1190, 1197

---

[1] Most significantly, Curtis Park is entitled to recover "two times the covered benefit" in addition to the damages that the jury found for breach of contract. *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1229 (10th Cir. 2016). In this motion, Curtis Park has not addressed all of the monetary elements that should be included in the final judgment based on the Court's instruction that there will be no judgment until the attorney's fee request is resolved. *See* Dkt. 303 (April 4, 2023 Courtroom Minutes); Tr. 1578. Curtis Park will outline those elements as the Court directs during the judgment-formation process.

(D. Colo. 2015) ("After the jury makes its determination of liability in a Section 10-3-1116(1) claim, the Court awards reasonable attorneys' fees.").[2]

Through this Motion, Curtis Park requests an award of $2,767,438 in attorney's fees that have thus far been billed by Haynes and Boone through monthly invoices issued throughout this litigation (for services up to April 7, 2023), plus additional amounts for fees incurred in briefing this and other post-trial motions. Curtis Park's fee request is governed by Colorado law, although courts in this District have often noted that "[t]he Colorado and federal standards for calculating reasonable attorney fees are essentially identical." *US General, LLC v. GuideOne Mut. Ins. Co.*, 2022 WL 1302360, at *2 (D. Colo. Mar. 30, 2022). Curtis Park's request is reasonable under any standard.

A. Legal Standards. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," also known as the "lodestar amount." *Rockhill Ins. Co. v. CFI-Global Fisheries Mgmt.*, 591 F. Supp. 3d 1020, 1026 (D. Colo. 2021); *Biax Corp. v. NVIDIA Corp.*, 2013 WL 4051908, at *1 (D. Colo. Aug. 12, 2013) ("To fix a reasonable fee award, a court must begin by calculating the 'lodestar amount'"). The fee claimant "is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998); *see also Realtime Adaptive Streaming LLC v. Sling TV LLC*, 2022 WL 4356897, at *2 (D. Colo. Sept. 19,

---

[2] As for the award of "court costs," Curtis Park will follow the procedures outlined in Local Rule 54.1 after the issuance of judgment, as directed by the Court on the final day of trial. Tr. 1579; *see also Rockhill Ins.*, 591 F. Supp. 3d at 1027 (rejecting request for costs in attorney's fee order and "direct[ing] the parties to comply with" the local rule). To the extent the parties have disputes about particular categories of recoverable costs under Colorado law, Curtis Park will seek appropriate relief at that time.

2022) ("The lodestar is presumed to be a reasonable fee."), *appeal filed* No. 23-1035 (Fed. Cir.). That presumption is particularly strong when "sophisticated consumers of legal services" actually paid the fees that were billed in the litigation. *See id.* at *3-4.

Courts consider a number of factors in determining whether to adjust the lodestar amount up or down. *See id.* at *3; *Rockhill*, 591 F. Supp. 3d at 1026; *see also US General, LLC v. GuideOne Mut. Ins. Co.*, 2022 WL 17576353, at *9 (10th Cir. Dec. 12, 2022) ("After calculating the lodestar, the district court may increase or decrease the fee award 'based on the degree of success achieved.'"). In considering whether the requested number of hours were reasonably expended, those factors include: (1) whether the tasks being billed would normally be billed to a paying client; (2) the number of hours spent on each task; (3) the complexity of the case; (4) the number of reasonable strategies pursued; (5) the responses necessitated by the maneuvering of the other side; and (6) potential duplication of services by multiple lawyers. *Rockhill*, 591 F. Supp. 3d at 1026 (quoting *Robinson*, 160 F.3d at 1281); *see also Etherton*, 82 F. Supp. 3d at 1198 (similar). Courts also consider "a similar list of factors" from the Colorado Rules of Professional Conduct. *US General*, 2022 WL 1302360, at *2 & n.2.[3]

Factors most relevant to the requested hourly rates are the experience, reputation, and ability of the lawyers performing the services; the skill required to perform

---

[3] Rule 1.5 of the CRPC provides that "[t]he factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill  requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent."

those services; and the prevailing market rates in the community for attorneys of similar experience and expertise. *See Etherton*, 82 F. Supp. 3d at 1200; *US General*, 2022 WL 17576353, at *10. On this prong, the claimant should produce "satisfactory evidence— in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Biax*, 2013 WL 4051908, at *6 (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).) A law firm's normal billing rate for paying clients carries some weight as a reasonable rate, especially when the lawyers specialize in the subject of the litigation. *See Realtime Adaptive Streaming*, 2022 WL 4356897, at *4; *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983).

In evaluating the reasonableness of a fee request, none of the above-listed factors is conclusive. *US General*, 2022 WL 1302360, at *2. "Ultimately, the Court's goal is to fix a fee that would be equivalent to what the attorney would reasonably bill for those same services in an open market." *Etherton*, 82 F. Supp. 3d at 1198. The applicant should "exercise the same 'billing judgment' as would be proper in setting fees for a paying client," and courts may deny fees they find "excessive, redundant, and otherwise unnecessary." *US General*, 2022 WL 1302360, at *2; *Etherton*, 82 F. Supp. 3d at 1198. That said, the Court "need not parse and evaluate every individual billing entry and determine the amount of a reasonable award down to the last penny." *US General*, 2022 WL 1302360, at *2. "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their

overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

B. Curtis Park's Lodestar Amount. As explained and supported in the attached evidence, Curtis Park's attorneys and other professionals reasonably billed 3,952.5 hours related to this case over the last three-plus years at reasonable hourly rates between $350-$1175, for a lodestar figure of $2,767,438. There is nothing theoretical about that number: Curtis Park has actually paid all but the most recent invoice in the normal course of business (and will soon pay that invoice as well), which shows that Haynes and Boone's fees were reasonable given the complexity of the case, the amount in controversy, the contentiousness of the litigation, and the success achieved at trial. *See Realtime Adaptive Streaming*, 2022 WL 4356897, at *3-4. Yet despite that success, Curtis Park does not seek an upward adjustment of the lodestar amount; it just wants to recover the amounts actually billed by and paid to Haynes and Boone.

C. Evidence of Hours Expended. The Declaration of Ernest Martin Jr., which is attached as Exhibit 1 ("Martin Decl."), addresses each of those issues and substantiates Curtis Park's fee request, including by authenticating and attaching redacted versions of Haynes and Boone's detailed invoices describing the time billed in this case.

All of the time billed and requested was reasonably expended. In his declaration, Mr. Martin discusses the comprehensive services that Haynes and Boone attorneys and other professionals performed in litigating this case. (Martin Decl. ¶¶ 21, 27-30.) These extensive—though still non-exhaustive—services included: investigating many legal and factual issues related to Allied World's coverage denials; attempting to reach a pre-suit

resolution of Curtis Park's insurance claims; filing this lawsuit; preparing multiple disclosures and other forms of discovery that encompassed the review, production, and analysis of voluminous document discovery, including countless discovery disputes with Allied World; preparing and presenting fifteen witnesses for deposition; deposing fifteen witnesses from Allied World and other parties; preparing responses to Allied World's motion for summary judgment, motion for reconsideration, motion in limine, and other filings attempting to eliminate or hamstring Curtis Park's claims; negotiating, briefing, and arguing numerous pre-trial matters; preparing all materials and witnesses for trial; and presenting the case over seven days of trial. (*Id.* at ¶ 21.)

Mr. Martin's declaration is supported by detailed, contemporaneous billing records showing each of the services that were performed, when the services were performed, and how much time was spent on each service. (*Id.* at Ex. 1-B.) These services required thousands of hours of work to complete and were all reasonable and necessary to obtain the verdict in Curtis Park's favor. (*Id.* at ¶¶ 17, 28, 39.) As Mr. Martin explains, this was a complex case that raised difficult factual and legal issues related to construction law and insurance coverage. (*See id.*) Allied World apparently doesn't dispute that fact. *See* Dkt. 320 at 1, 7 (arguing "[t]his was a close case presenting complex issues of fact and law" and "involv[ing] complex engineering principles and technical legal concepts"). Given Allied World's blanket coverage denial and other litigating positions, Haynes and Boone lawyers were forced to run down numerous legal issues related to the scope of coverage under the Policy and factual issues related to the cause of the deflection of the concrete slab—many of which required expert testimony at trial. (Martin Decl. ¶ 28.) And

this was a significant case to Curtis Park, both in terms of monetary value and reputational risk. (*Id.*) For those reasons alone, it was reasonable for Curtis Park and its attorneys to prepare a thorough and diligent prosecution of the claims in this case.

The time spent litigating this case was only exacerbated by Allied World's coverage positions and litigation strategy. This is not to cast aspersions on zealous advocacy—it is simply to say that Allied World heavily litigated this case throughout, and that necessarily required Haynes and Boone to spend more time analyzing additional issues, preparing additional responses, and resolving additional disputes. (*Id.* at ¶¶ 29-30.) Just by way of example, Allied World's conduct and strategy required Curtis Park to expend significant amounts of attorney time and expense litigating discovery disputes; moving to disqualify Allied World's initial trial counsel (because he was also an important fact witness); defending against Allied World's misguided misrepresentation claim (which required a full-throated response—despite lacking in merit—to prevent a voiding of the policy); responding to Allied World's motion for summary judgment (and to reconsider); responding to Allied World's motion in limine on the hard-costs issue, which was really just a second shot at summary judgment (as the Court found, Dkt. 250); and preparing to examine 15 trial witnesses that Allied World pulled at the last minute during trial.

In the process of issuing invoices throughout the case, Mr. Martin exercised billing judgment by reducing or writing off more than $220,000 in attorney and professional time that was actually expended but never charged to Curtis Park. (Martin Decl. ¶ 31, Ex. 1-D.) In addition, as part of this filing, Curtis Park is not seeking to recover fees for work done by attorneys and professionals who charged Curtis Park for less than twenty hours

of work. (*Id.* at ¶ 32.) In other words, Curtis Park's request does not simply reflect tasks that "would normally be billed to a paying client," *Rockhill*, 591 F. Supp. 3d at 1026—it reflects *less than* the amounts that were actually billed to (and paid by) a paying client.

Moreover, Curtis Park is entitled to recover for all the time its attorneys spent litigating this case—and there is no need to allocate between causes of action—even though the fee award derives from the statutory bad faith claim. In this Circuit, it is unnecessary to allocate between time spent on various causes of action when the litigation involves multiple claims arising from a common nucleus of facts and related legal theories, as here. *See US General*, 2022 WL 1302360, at *4 (*quoting Robinson*, 160 F.3d at 1283). And courts in this District have applied that rule in similar insurance cases with overlapping claims for breach of contract, common-law bad faith, and statutory bad faith. *Id.*; *Rockhill*, 591 F. Supp. 3d at 1026-27. That's true even where, as here, the insured did not prevail on its common-law claim. *Rockhill*, 591 F. Supp. 3d at 1027. The point is: because these insurance-based claims are "intertwined factually and, to some degree, legally," allocation is "neither reasonable nor required." *US General*, 2022 WL 1302360, at *4; *id.* ("[A] court should focus on the significance of the overall relief that the prevailing party has won: The result is what matters.") (citation omitted).

In addition to the attorney's fees that have already been incurred, billed, and paid in this case, Curtis Park is entitled to recover for the attorney's fees that it has and will reasonably incur briefing this motion and other post-trial motions. *See, e.g., Etherton*, 82 F. Supp. 3d at 1200 (awarding attorney's fees for "the substantial post-judgment briefing in this action); *Realtime Adaptive Streaming LLC*, 2022 WL 4356897 at *5 (awarding

attorney's fees for "hours preparing and defending its motion for attorney's fees"). Unless the Court prefers a different procedure, Curtis Park intends to submit supplemental declarations from Mr. Martin (with supporting invoices) at two checkpoints: (1) at the conclusion of briefing and any hearing on this Motion for Attorney's Fees; and (2) at the conclusion of briefing and any hearing on other post-trial or post-judgment motions.[4]

D. Evidence of Hourly Rates. In supporting the reasonableness of the requested hourly rates, Mr. Martin explains in his declaration that the lawyers and professionals on the Haynes and Boone team were all eminently qualified to perform the services reflected in the attached invoices and he briefly summarizes their relevant qualifications and experiences. (Martin Decl. ¶¶ 22-25.) His summaries and the attached biographies are incorporated herein by reference. (*Id.* at Ex. 1-C.) Mr. Martin also explains that he—as the billing attorney—exercised reasonable judgment in assigning appropriate tasks to timekeepers with lower rates whenever possible. (*Id.* at ¶ 22.)

Mr. Martin then explains that the range of hourly rates charged were reasonable for a case like this. (*Id.* at ¶¶ 34-37.) Curtis Park hired Haynes and Boone because this was a complex insurance dispute that required sophisticated and specialized coverage counsel. Mr. Martin and his team fit that bill. Mr. Martin co-founded the Insurance Law Section of the State Bar of Texas, and he has been at the forefront of insurance law issues on the policyholder side for three-plus decades. (*Id.* at ¶¶ 3-6.) He and the other lawyers working on this matter have significant experience with complex insurance

---

[4] Curtis Park also reserves its right to seek appellate attorney's fees if Allied World appeals and Curtis Park prevails. *See, e.g., Melssen v. Auto-Owners Ins. Co.*, 285 P.3d 328, 339 (Colo. App. 2012) ("When a party is awarded attorney fees for a prior stage of the proceedings, it may recover reasonable attorney fees and costs for successfully defending the appeal.").

disputes, trials, and appeals. (*Id.* at ¶¶ 22-23.) In Mr. Martin's experience, the rates charged by Haynes and Boone are consistent with the rates charged by other lawyers of comparable skill and experience—and are therefore reasonable. (*Id.* at ¶¶ 34-36.)

But Curtis Park has gone a step further to prove that point. Because Mr. Martin does not regularly practice in Denver, Curtis Park engaged a local expert—Chris Mosley, partner at Foley Hoag—to give an opinion about whether the requested hourly rates are reasonable and in line with prevailing rates in this community for lawyers of comparable skill, experience, and reputation. Mr. Mosley has concluded they are, as explained in the Declaration of Christopher R. Mosley, attached as <u>Exhibit 2</u> ("Mosley Decl.").

Mr. Mosley has worked in private practice for thirty-two years in the area of complex commercial litigation, with a specialization in insurance recovery work on behalf of policyholders. (Mosley Decl. at ¶¶ 7-21.) He is currently a partner at the international law firm Foley Hoag LLP and before that was an equity member at Sherman & Howard L.L.C. (*Id.* at ¶¶ 10-12.) Mr. Mosley has practiced in Denver for nearly thirty years. (*Id.*) Like Mr. Martin, Mr. Mosley is a Fellow of the American College of Coverage Counsel, a prestigious, invitation-only honorary society of lawyers who specialize in insurance coverage work. (*Id.* at ¶ 14.) Mr. Mosley also serves on the Board of the College. (*Id.*) Given his experience, Mr. Mosley is familiar with the rates charged by complex litigation and insurance recovery attorneys in the Denver area and nationwide. (*Id.* at ¶ 18.)

As Mr. Mosley explains in his Declaration, the hourly rates charged by Haynes and Boone are reasonable and within the ranges charged for comparable, specialized insurance work nationally and in Denver. (*Id.* at ¶ 5, 63-76.) Because this was a complex

case involving difficult insurance coverage issues, Mr. Mosley concludes that it was reasonable and necessary for Curtis Park to engage attorneys who specialize in commercial insurance coverage issues. (*Id.* at ¶¶ 58-61.) There are not many attorneys nationwide who practice full time in the area of commercial insurance coverage for policyholders and fewer still in Denver—so this is a niche practice that commands top market, national rates. (*Id.* at ¶ 41.) Haynes and Boone's hourly rates are certainly consistent with other lawyers of comparable skill and experience with national practices. (*Id.* at ¶¶ 42-46.) And they are further consistent with hourly rates charged by commercial litigation attorneys—a much less specialized field—at AmLaw 100 firms in Denver. (*Id.*) In short, Mr. Mosley concludes that Haynes and Boone's hourly rates are reasonable and should be used in calculating the lodestar amount.

In addition, given his extensive experience litigating similar cases, Mr. Mosley also concludes that the time the Haynes and Boone attorneys spent litigating this case—and thus, the total amount of fees incurred—was reasonable for the nature and type of work required to successfully litigate a case like this through trial. (*Id.* at ¶ 82.) As Mr. Mosley explains, trying an insurance-coverage dispute against an insurance company with near-unlimited litigation resources is expensive, and fees in the $2 million to $3 million range are reasonable and expected for a case like this. (*Id.*) And that is particularly true given the exemplary result that Haynes and Boone obtained in this case by securing multi-million-dollar findings of breach of contract and statutory bad faith. (*Id.*)

E. Adjusting the Lodestar. The chart below summarizes the lodestar calculation for all of the attorneys and professionals for whom Curtis Park seeks to recover:

| Timekeeper | Total Hours | Total Fees | Rate Range |
|---|---|---|---|
| Andrew Guthrie | 236.7 | $224,865.00 | $950 |
| Casey B. McGovern | 44.3 | $19,631.50 | $395 - $500 |
| Daniel T. Mabery | 233.5 | $139,505.00 | $575 - $600 |
| DiAnna Gaeta | 102.7 | $39,034.50 | $350 - $475 |
| Emily Buchanan | 1,124.6 | $780,074.00 | $530 - $850 |
| Ernest Martin, Jr. | 670.7 | $716,409.50 | $925 - $1175 |
| Kathleen Repko | 1,371.8 | $765,496.00 | $425-$730 |
| Michael Brockwell | 134.5 | $63,887.50 | $475 |
| Rae Guyse | 33.7 | $18,535.00 | $550 |
| **Grand Total** | **3,952.5** | **$2,767,438.00** | |

Both Mr. Martin and Mr. Mosley considered the appropriateness of an upward or downward adjustment to the lodestar amount based on the factors addressed above on page 4—and both determined that such an adjustment is not necessary. (Martin Decl. ¶¶ 40-42; Mosley Decl. ¶¶ 77-81.)

If anything, Curtis Park's success at trial supports a larger fee award. *See US General*, 2022 WL 17576353, at *10 (10th Cir. 2022) ("[U]nder Colorado law, a high 'degree of success achieved' supports a larger fee award."). Another judge in this District recently held that "[p]roving to a jury of nine that an insurance company unreasonably denied insurance benefits constitutes a significant success." *US General*, 2022 WL 1302360, at *3. And that remark came in a case where the insured recovered only a dollar for breach of the insurance policy. *Id.* at *1. Here, in contrast, Curtis Park proved more than $2.5 million in damages for breach of the policy *in addition* to securing another $5 million in statutory damages for Allied World's unreasonable denial of benefits. *See* Dkt. 308. From any angle, Curtis Park achieved a high degree of success in this case.

Yet despite that success, Curtis Park does not seek any adjustment to the lodestar amount. It simply requests an award of the amounts actually billed by and paid to Haynes

and Boone. The rates charged by Haynes and Boone adequately accounted for the difficulty of the case, the success that was obtained, and the other factors that courts might consider in determining whether to adjust the lodestar amount. (*See* Mosley Decl. at ¶¶ 77-81.) Taken together, the declarations of Mr. Martin and Mr. Mosley—along with the accompanying, contemporaneous billing records—meet Curtis Park's burden to prove the requested fees are reasonable under Colorado law.

**III.**
**CONCLUSION**

WHEREFORE, Curtis Park respectfully requests that this Court grant this Motion and award it $2,767,438 in reasonable attorney's fees as provided by Colo. Rev. Stat. § 10-3-1116(1). Curtis Park further prays for any other relief to which it may be entitled.

Dated this 9th day of May 2023

*/s/ Kathleen Repko*
Kathleen Repko
Haynes and Boone, LLP
800 17th Street, NW Suite 500
Washington, DC 20006
Telephone: 202.654.4527
Email:kathleen.repko@haynesboone.com

*/s/ Ernest Martin, Jr.*
Ernest Martin, Jr.
Emily Buchanan
Andrew W. Guthrie
Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas  75219-7672
Telephone: 214.651.5000
Email:ernest.martin@haynesboone.com
emily.buchanan@haynesboone.com
andrew.guthrie@haynesboone.com

## CERTIFICATE OF CONFERENCE

On May 4, 2023, I conferred with opposing counsel via telephone regarding the relief requested in this Motion. Counsel stated that Allied World opposes the relief requested in this Motion.

/s/ Andrew W. Guthrie
Andrew W. Guthrie

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of May 2023 I electronically filed the foregoing **PLAINTIFF'S MOTION FOR ATTORNEY'S FEES** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses and all counsel of record:

Russel E. Yates, Esq.
Ryan R. Yates, Esq.
Yates Law Firm, LLC
1667 Cole Boulevard, Suite 205
Lakewood, Colorado 80401
Telephone: 303-722-2810
ryates@ylf.law
ryanyates@ylf.law

Carolyn J. Fairless
Frederick R. Yarger
William P. Sowers, Jr.
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202
Telephone: 303-244-1800
fairless@wtotrial.com
yarger@wtotrial.com
sowers@wtotrial.com

/s/ Andrew W. Guthrie
Andrew W. Guthrie