# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:20-cv-00552-CNS-NRN

CURTIS PARK GROUP, LLC,

      Plaintiff,

v.

ALLIED WORLD SPECIALTY INSURANCE COMPANY,

      Defendant.

---

**DECLARATION OF ERNEST MARTIN, JR.**

---

      I, Ernest Martin, Jr., hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

    1.  My name is Ernest Martin, Jr. I am an attorney and partner at Haynes and Boone, LLP, I am the Chair of the firm's Insurance Recovery Practice, and I reside in Dallas, Texas. I have a national practice litigating insurance recovery disputes, as explained below, and Haynes and Boone has an office in Denver, Colorado. The firm and I were engaged to provide legal representation related to the above-styled litigation (the "Curtis Park Lawsuit") to Curtis Park Group, LLC and have done so since August 2019.

    2.  I am over 21 years of age, of sound mind, and capable of making this declaration. The facts stated in this declaration are within my personal knowledge and are true and correct. The opinions stated in this declaration are based on my knowledge of this case and my background, knowledge, and experience as an attorney.

3.  I received my law degree from the University of California – Berkely School of Law in 1987. I am and have been in good standing and licensed to practice law in Texas since 1988.  I am a member in good standing of the U.S. District Court for the District of Colorado, in addition to numerous other federal courts across the country. I joined Haynes and Boone in 1987 and have practiced there ever since.

4.  During this time, I have focused my practice on representation of public and private policyholders in insurance disputes and litigation. I am routinely called upon to advise on coverage disputes in state and federal courts across the country, including disputes involving property damage, business interruption claims, general liability claims, professional liability claims, director and officer liability claims, cyber liability claims, personal injury suits and other catastrophic events. I have earned a Band 1 rating in the *Chambers USA* directory every year since 2004 as one of the top-ranked insurance lawyers in Texas, and the Chambers 2022 guide said: "Ernest Martin is widely considered a leading policyholder-side practitioner and offers broad experience across coverage disputes relating to a variety of major claims."[1] An earlier guide stated: Ernest is "described by clients as 'probably one of the top coverage counsel in the country.' He knows the area inside-out and is a creative thinker with outstanding negotiation skills."[2] I am also recognized as, among other awards and recognitions, a *Best Lawyer in America* in Insurance Law since 2005, in Litigation Insurance since 2016, as a *Texas Super Lawyer* over the past 20 years and as a *Who's Who* in Insurance & Reinsurance since 2007.

---

[1] https://chambers.com/lawyer/ernest-martin-usa-5:161516
[2] https://www.worldservicesgroup.com/profile/attorney/ernest-martin/537 (quoting Chambers USA: America's Leading Lawyers for Business 2010).

5.  I have served in leadership roles for the insurance bar at the local, state and national levels for many years. I am the co-founder and past Chair of the Insurance Law Section of the State Bar of Texas. I was the co-chair the American Bar Association's Insurance Coverage Litigation Committee, comprised of 2,400 members nationwide, from 2019 to 2021. I am a Fellow of the American College of Coverage Counsel. I am also an Adjunct Professor of Insurance Law at the SMU Dedman School of Law, having served in that role for 17 years, and I speak and write frequently about cutting-edge insurance topics across the country. I am also the founder of the Texas Insurance Academy, a Dallas-Fort Worth based organization founded 7 years ago and comprised of a Board of Risk Managers of major industries as well as national insurance brokers, which sponsors an annual education and networking program addressing important insurance issues facing corporate policyholders.

6.  I have also served in significant leadership roles in my firm, including as the head of the firm's Insurance Recovery Practice, as the managing partner of the Dallas office, and on other firm management committees. I currently serve on the firm's managing Board of Directors.

7.  Throughout the course of my career, I have become familiar with the legal fees reasonably expended and hourly rates customarily charged by attorneys in jurisdictions across the country. A true and correct copy of my current professional resume, including my qualifications and a list of publications authored by me, which further highlights my experience and education, is attached hereto as "Exhibit 1-A."

8.  I submit this declaration in support of Curtis Park's Motion for Attorney's Fees.

9.   On April 4, 2023, after years of litigation and a seven-day trial, the jury in the above-referenced case found, among other things, that Curtis Park had proven its claims for breach of contract and statutory bad faith. (Dkt. 308.) The jury awarded more than $2.5 million in damages for breach of contract and an additional $2.5 million as the covered benefit for purposes of the statutory bad faith violation. Pursuant to Colo. Rev. Stat. §§ 10-3-1115-1116, Curtis Park is entitled to recover the benefits due under the Policy, plus two times the covered benefits, plus attorney's fees and court costs.

10. Curtis Park has incurred and paid attorney's fees to Haynes and Boone for prosecuting the Curtis Park Lawsuit and its earlier representation related to the coverage denial ("Curtis Park's Fees"). Below are my opinions regarding Curtis Park's Fees.

**A.  The data or other information considered.**

11. Curtis Park retained Haynes and Boone as its counsel in August 2019 for purposes of seeking insurance coverage under Builder's Risk Policy No. 0310-2780, after Curtis Park's claim for coverage was denied by its insurer, Allied World Specialty Insurance Company ("Allied") (the "Representation").

12. In making this declaration and addressing the reasonableness of fees related to the Representation, I have considered and relied upon the billing invoices that Haynes and Boone issued to Curtis Park throughout the Representation, which include detailed, contemporaneous descriptions of the time spent and services performed by Haynes and Boone attorneys and legal professionals; the billing judgment exercised in issuing those invoices, as explained in more detail below; the docket and certain pleadings, motions, orders, and discovery; my own personal knowledge and experience in this litigation, in

addition to knowledge and experience I've gained over more than thirty years of legal practice; confidential reports of standard hourly rates charged by lawyers at other AmLaw 100 firms; and the jury's April 4, 2023 verdict. I have also considered jurisprudence in the Tenth Circuit and Colorado regarding the recovery of attorney's fees.

13. True and correct copies of Haynes and Boone's invoices are attached as Exhibit 1-B. The invoices are partially redacted to prevent the disclosure of privileged information.

**B.  Summary and support for my opinions.**

14. Haynes and Boone has thus far billed $2,775,373.00 in attorney's fees for work on the Representation between August 2019 and April 7, 2023 (the last date of work reflected in the most recent invoice that Haynes and Boone issued on April 24, 2023). Of these fees, Curtis Park has paid all but the most recent invoice. As with all the other invoices, I expect to receive payment on that invoice in the normal course of Curtis Park's business.

15. Collectively, Haynes and Boone attorneys and legal professionals billed Curtis Park for 3,969 hours of time on the Representation. *See* Ex. 1-B.

16. The average hourly rate for the work that was billed to Curtis Park in the Representation, including attorneys and legal professionals, is approximately $699.26. My team calculated this amount by using the total amount of attorney's fees that Haynes and Boone has billed through April 7, 2023 (in ¶ 14 above) and dividing that amount by the total hours billed and not written off (in ¶ 15). To that end, Haynes and Boone reduced its charges for the attorneys and legal professionals working on this case in a total amount of $222,537 over the life of the litigation via discounted bills, and the exercise of billing judgment by me, the Haynes and Boone billing partner on this case.

17. In my opinion, which is more fully explained below, Curtis Park's Fees were both reasonable and necessarily incurred. This was a complex case involving complicated legal and factual issues related to insurance coverage and construction law. The litigation lasted for more than three years (and counting), and—due in large part to the fact that Curtis Park's adversary is a sophisticated, active defendant with good lawyers—the litigation required a considerable investment of attorney time and expense to prevail in multiple discovery disputes, pretrial legal briefs, and at trial. For those and other reasons detailed more fully below, Curtis Park's Fees are reasonable according to the standards laid out in controlling caselaw from this Circuit and District and other Colorado authorities like Rule 1.5 of the Colorado Rules of Professional Conduct. *See, e.g., Rockhill Ins. Co. v. CFI-Global Fisheries Mgmt.*, 591 F. Supp. 3d 1020, 1026 (D. Colo. 2021); *US General, LLC v. GuideOne Mut. Ins. Co.*, 2022 WL 17576353, at \*9 (10th Cir. Dec. 12, 2022); *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998); *Etherton v. Owners Ins. Co.*, 82 F. Supp. 3d 1190, 1197 (D. Colo. 2015).

**C.  Lodestar of Curtis Park's Fees and factors related to reasonableness.**

18. In rendering my opinions regarding the reasonableness of Curtis Park's Fees, I have considered jurisprudence from the Tenth Circuit and this Court regarding proof to support the recovery of attorney's fees.

19. Based on those authorities, I started my analysis by calculating the lodestar amount: the total amount of fees produced by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Based on the contemporaneous billing records attached as Exhibit 1-B and my overall knowledge of the litigation, I have

determined that Curtis Park's attorneys and other professionals reasonably billed 3,952.5 hours litigating this case at reasonable hourly rates between $350-$1175, for a lodestar figure of $2,767,438.00. My lodestar conclusion is bolstered by the fact that Curtis Park has actually paid almost all of those amounts (and will soon pay the remainder) through monthly invoices issued by Haynes and Boone over the life of the case.

20. I have also considered various other factors in determining the reasonableness of Haynes and Boone's fees and whether to adjust the lodestar amount up or down, including: (1) whether the tasks being billed would normally be billed to a paying client; (2) the number of hours spent on each task; (3) the complexity of the case; (4) the number of reasonable strategies pursued; (5) the responses necessitated by the maneuvering of the other side; and (6) potential duplication of services by multiple lawyers. *US General, LLC v. Guideone Mut. Ins. Co.*, 2022 WL 1302360, at *2 & n.2 (D. Colo. Mar. 30, 2022), citing Rule 1.5 of the CRPC[3]; *see also Rockhill*, 591 F. Supp. 3d at 1026. In considering the reasonableness of Haynes and Boone's hourly rates, I have considered the experience, reputation, and ability of the lawyers performing the services; the skill required; and the prevailing market rates in the relevant community for attorneys of similar experience and expertise. I discuss these factors below.

---

[3] Rule 1.5 of the CRPC provides that "[t]he factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill  requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent."

21. Services performed. In this action, attorneys and other professionals from Haynes and Boone provided the following non-exclusive list of services:

a. Investigated, researched, and evaluated both the legal and factual bases for Allied's coverage denial and the parties' claims and defenses;

b. Conducted preliminary settlement negotiations and meetings to potentially resolve the parties' disputes after Allied's denial of the insurance claim and in anticipation of possible litigation;

c. Prepared Curtis Park's original complaint and related documents;

d. Reviewed Allied's responsive pleadings;

e. Prepared Curtis Park's disclosures and supplemental disclosures;

f. Conferred with opposing counsel and prepared proposed scheduling order;

g. Conferred with opposing counsel and prepared joint motion for protective order;

h. Prepared Curtis Park's discovery requests to Allied and reviewed Allied's responses and large document productions, which ultimately comprised more than 100,000 pages;

i. Prepared responses to Allied's discovery requests;

j. Reviewed and produced Curtis Park's documents responsive to Allied's discovery requests, including to redact or withhold information protected by attorney-client privilege or work product protection;

k. Prepared Curtis Park's privilege log and supplemental privilege logs;

l.   Reviewed and responded to numerous subpoenas issued by Allied for third party discovery;

m.  Prepared numerous subpoenas for third party discovery;

n.   Reviewed large document productions from third parties responsive to subpoenas issued by Curtis Park and Allied, which ultimately comprised more than 100,000 pages;

o.   Prepared emergency motion for protective order and related pleadings regarding inadvertently produced documents by third party;

p.   Conferred with opposing counsel and engaged in motions practice regarding numerous discovery disputes regarding Allied's insufficient discovery responses and document productions;

q.   Prepared for and attended an unsuccessful mediation;

r.   Conferred with opposing counsel and retained Special Discovery Master to handle numerous discovery disputes;

s.   Conferred with opposing counsel and prepared briefing about Curtis Park's right to depose Ryan Yates and, ultimately, to disqualify him from serving as both a fact witness and trial counsel;

t.   Prepared and presented 15 Curtis Park witnesses at depositions;

u.   Prepared for and took depositions of 15 witnesses from Allied and third parties;

v.   Prepared a response and surreply to Allied's motion for summary judgment, along with supplemental briefing regarding same, and prepared responses to Allied's subsequent motion for reconsideration;

w.  Worked with three testifying experts in their preparation of seven reports and rebuttal reports;

x.   Prepared Rule 702 motions to exclude testimony of Allied's designated experts and replies regarding same;

y.   Prepared responses to Allied's Rule 702 motions to exclude testimony of Curtis Park's designated experts;

z.   Prepared response to Allied's motion in limine seeking to exclude evidence of hard costs incurred by Curtis Park under the Policy;

aa. Conferred with opposing counsel and prepared the parties' Joint Final Pre-Trial Order;

bb. Prepared for and attended Final Pre-Trial Conference on January 6, 2022;

cc. Prepared response to Allied's motion to bifurcate trial;

dd. Conferred with opposing counsel and prepared Curtis Park's motion in limine;

ee. Conferred with opposing counsel and prepared trial exhibit and witness lists;

ff.  Conferred with opposing counsel and prepared objections to Allied's trial exhibits;

gg. Conferred with opposing counsel and prepared deposition designations, objections to Allied's deposition counter-designations and responses to Allied's objections to Curtis Park's deposition designations;

hh. Conferred with opposing counsel and prepared jury instructions, verdict form and voir dire questions;

ii. Reviewed and prepared responsive arguments to issues raised in Allied's trial brief;

jj. Prepared for, attended, and argued at the March 9, 2023 Final Trial Preparation Conference before this Court in addition to a subsequent Trial Preparation Conference held on March 20, 2023;

kk. Prepared for and presented Curtis Park's case at a seven-day jury trial before this Court.

The attached billing records (Ex. 1-B) further detail each individual service performed within those broader categories—all of which were reasonable and necessary to obtain a verdict in Curtis Park's favor.

22. Who Performed The Services. Haynes and Boone is a large, AmLaw100 firm with a well-known reputation for sophisticated legal services and quality representation in and out of court. Haynes and Boone's Insurance Recovery Practice in particular has been at the forefront of the development of law related to insurance recovery, and therefore brought a unique skill set and knowledge to this dispute. Legal services for Curtis Park were performed by Haynes and Boone professionals including myself, counsel Daniel T. Mabery, associate Kathleen Repko, associate Emily Buchanan, partner Andrew Guthrie,

associate Rae Guyse, and other legal professionals identified below. Each of the lawyers and legal professionals who worked on this matter were well qualified with respect to the tasks performed, as evidenced not only by the results obtained, but also by the fact that several of these attorneys have previously prosecuted and defended insurance and other complex business cases at trial and on appeal. I exercised billing judgment throughout the case to assign appropriate tasks to timekeepers with lower rates whenever possible.

23. The lawyers for whom Curtis Park is claiming attorney's fees include:

a. **Ernest Martin, Jr., Partner, Haynes and Boone**: Served as lead counsel throughout the representation of Curtis Park and participated in all aspects of pre-litigation representation, initial pleadings, discovery, motions practice, and trial. I have been a licensed, practicing lawyer for more than 36 years and have served as lead counsel in countless insurance disputes, as shown in my qualifications above and attached.

b. **Daniel T. Mabery, former Counsel, Haynes and Boone**: Served as counsel for Curtis Park at the outset of the Representation (before leaving Haynes and Boone for other employment), including to lead the pre-suit investigation and counseling after denial of the claim, conduct initial claim research, and draft initial case pleadings and disclosures.  Mr. Mabery recently passed away, but until the time of his death, had been a licensed, practicing lawyer since 1995. Mr. Mabery focused his practice on insurance law, and also served as in-house counsel at various points of his career. Mr. Mabery was the valedictorian of his graduating class at St. Mary's University School of Law and the Note & Comment Editor of *St. Mary's Law Journal.*

c.   **Emily Buchanan, Associate, Haynes and Boone**: Participated in aspects of fact discovery including written discovery and depositions, expert discovery, motions practice, and trial. Ms. Buchanan focused particularly on issues related to the cause of the deflection—including to work with Curtis Park's experts on those issues—took and defended eight depositions, argued multiple hearings, participated in voir dire, and examined four witnesses at trial. Ms. Buchanan has been a licensed, practicing lawyer since 2016, focusing her practice on insurance law. Ms. Buchanan has been recognized as a "Rising Star" by Texas Super Lawyers, 2022-2023 (Thomson Reuters) and, in 2022, she was listed as "One to Watch" by Best Lawyers in America. Ms. Buchanan graduated *summa cum laude*, Order of the Coif, from University of Tennessee Law School in 2016. Ms. Buchanan also serves as an adjunct professor at the University of Tennessee College of Law, where she teaches a course on insurance law.

d.   **Kathleen Repko, Associate, Haynes and Boone**: Participated in aspects of fact discovery including written discovery and depositions, expert discovery, motions practice and trial. Ms. Repko focused particularly on issues related to Curtis Park's bad faith claims, managing incoming and outgoing document production and discovery disputes with opposing counsel, taking and defending eight depositions, arguing multiple hearings, and examining three witnesses at trial. She also served as Curtis Park's local counsel in Denver before moving away from the city in 2022. Ms. Repko has been a licensed, practicing lawyer since 2010, focusing her practice on general business litigation.  Ms. Repko graduated with honors from Duquesne University School of Law.

e. **Andrew Guthrie, Partner, Haynes and Boone**: Served as appellate counsel for Curtis Park and took the lead on developing and arguing Curtis Park's positions and strategy on legal issues related to jury instructions, motions for judgment as a matter of law, and other pretrial and trial disputes. Mr. Guthrie has been a licensed, practicing lawyer since 2011, focusing his practice on appeals and trial court briefing across an array of subject matters in business disputes and government investigations, including insurance coverage, bankruptcy, energy, and the False Claims Act. Mr. Guthrie has been recognized as a "Rising Star" by Texas Super Lawyers, 2016-2021 (Thomson Reuters) and, in 2020, he received the Rosner & Rosner Young Lawyer Professionalism Award from the American Bar Association's Center for Professional Responsibility. Mr. Guthrie graduated as the valedictorian from Baylor Law School in 2011, and served as a law clerk to then-Justice Don R. Willett on the Texas Supreme Court.

f. **Rae Guyse, former Associate, Haynes and Boone**: Performed legal research and assisted in briefing during the litigation before leaving Haynes and Boone for other employment. Ms. Guyse has been a licensed, practicing lawyer since 2020. Ms. Guyse received her law degree with honors from the University of Texas School of Law.

24. In addition to the services provided by the above-described lawyers, Curtis Park's Fees also include work performed by other Haynes and Boone legal professionals. All such work was substantive work performed under an attorney's direction and supervision. Those other legal professionals include ESI consultant DiAnna Gaeta, paralegal Casey McGovern, and trial consultant Michael Brockwell. These other legal professionals performed reasonable and necessary services throughout the litigation including but not

limited to processing and analyzing document productions, preparing and revising pleadings for filing, and preparing and presenting materials at trial.

25. True and correct copies of biographical information for all of the above-referenced attorneys and legal professionals are attached hereto as Exhibit 1-C.

26. Below is a summary chart identifying the total hours billed by each timekeeper, their range of rates over the course of the Representation, and total amount billed by each timekeeper:

| Timekeeper | Total Hours | Total Fees | Rate Range |
|---|---|---|---|
| Andrew Guthrie | 236.7 | $224,865.00 | $950 |
| Casey B. McGovern | 44.3 | $19,631.50 | $395 - $500 |
| Daniel T. Mabery | 233.5 | $139,505.00 | $575 - $600 |
| DiAnna Gaeta | 102.7 | $39,034.50 | $350 - $475 |
| Emily Buchanan | 1,124.6 | $780,074.00 | $530 - $850 |
| Ernest Martin, Jr. | 670.7 | $716,409.50 | $925 - $1175 |
| Kathleen Repko | 1,371.8 | $765,496.00 | $425-$730 |
| Michael Brockwell | 134.5 | $63,887.50 | $475 |
| Rae Guyse | 33.7 | $18,535.00 | $550 |
| **Grand Total** | **3,952.5** | **$2,767,438.00** | |

27. Reasonable Amount of Time to Perform Services.  As shown in the billing records, the legal services performed as part of the Representation were performed in anticipation of litigation, including before and during the Curtis Park Lawsuit, and continue to be performed. The time each attorney and legal professional spent performing the different tasks required to prosecute this matter is more thoroughly detailed in the billing records.

28. In the aggregate and individually, my opinion is that the amount of time billed to Curtis Park in this Representation was more than reasonable in light of the complexity and importance of the case, the amount in controversy, the contentiousness of the

litigation, and the success that Curtis Park achieved at trial, among other things. This was a complex case that raised difficult factual and legal issues related to the law of construction and insurance coverage. When Haynes and Boone was hired, Allied had denied coverage entirely without much of an explanation as to why. So, our team was forced to run down many legal issues related to the scope of coverage under the Policy—which, as the Court knows well, includes a complicated burden-shifting structure between the insuring agreement, the defined exclusions, and possible exceptions—in addition to all of the factual issues related to the cause of the deflection in the concrete slab. Many of those issues required expert testimony. And this was a significant case to Curtis Park, both in terms of monetary value and in terms of its reputation. For all of those reasons, it was reasonable for Curtis Park to prepare a thorough and diligent prosecution of the claims in this case.

29. That said, the length of these proceedings and the time necessary to perform much of the work was exacerbated by Allied's litigation conduct and strategy including:

    a. Allied failed multiple times to adequately produce documents pursuant to the discovery ESI protocol, which required multiple attorney conferral communications and processing and review of re-productions of documents from Allied;

    b. Allied improperly withheld claim investigation documents based on privilege, which created a three-month discovery dispute involving numerous attorney conferrals, hearings with the Magistrate Judge and multiple sets of briefing;

c.  Allied's initial trial counsel acted as both an attorney and insurance adjuster during the claim investigation, which resulted in extensive research, conferrals and motions practice related to the propriety of deposing trial counsel and his ultimate disqualification;

d.  Allied attempted to cancel a long-scheduled mediation and subsequently failed to meaningfully participate in the mediation;

e.  Allied's numerous failures to meaningfully confer regarding discovery-related disputes led to the appointment of a Special Discovery Master, which created additional requirements for the parties;

f.  Allied made numerous arguments and filed multiple motions (including Rule 702 motions, motions in limine and trial motions) related to a Project Close-Out Agreement which this Court ultimately held was not dispositive to the claims asserted by Curtis Park;

g.  Allied argued that Curtis Park had made misrepresentations or concealed certain facts, an allegation that required a full-throated defense—despite being meritless—because it could have voided the Policy if successful;

h.  Allied attempted to add additional trial witnesses to its trial witness list after its Court-ordered deadline, resulting in the need for multiple conferrals and a motion to strike additional witnesses;

i.  Allied filed an untimely motion to bifurcate issues for trial resulting in unnecessary motions practice;

j.   Allied filed a motion to reconsider the Court's summary judgment ruling based on new arguments, resulting in unnecessary motions practice;

k.   Allied listed 17 witnesses on its final trial witness list, so Curtis Park prepared to examine 17 witnesses; but on the final day of evidence during the trial, Allied reduced its witness list to two witnesses.

30. Without Allied's conduct related to those and other issues, Curtis Park's Fees in this case would not have been as high.

31. Throughout the Representation—and in the normal course of business—I reviewed all the billing entries by Haynes and Boone timekeepers before the fees were finalized and invoiced to Curtis Park. In that review, I exercised billing judgment, as I do for all my clients, to reduce or write-off time entries for work that I deemed duplicative, unnecessary, or otherwise unreasonable. Collectively, I wrote off $222,537.00 of time that was actually worked between August 6, 2019 and April 7, 2023. A true and correct copy of a partially redacted report showing all amounts written off is attached as Exhibit 1-D.

32. Moreover, in preparing this fee application, I have additionally eliminated the hours billed and the fees charged by five additional timekeepers who each performed less than 20 hours of work in this case, including Benjamin Schindler, Associate; Joe Pinto, Associate; Edward Fik, Researcher; Patti Zerwas, E-Discovery Project Manager; and Riva Laughlin, Librarian. The time spent by these timekeepers was reasonable under the circumstances and was actually billed to Curtis Park. Curtis Park is simply not seeking recovery of these charges.

33. Based on my review of the billing records, my experience, and my consideration of the relevant factors outlined in the caselaw referenced above, I believe the amount of time spent to perform the necessary services described herein to prosecute and defend this complex lawsuit on behalf of Curtis Park was both necessary and reasonable.

34. <u>Reasonable Hourly Rates</u>. The fees that Curtis Park incurred in the Curtis Park Lawsuit were billed at fixed hourly rates, as agreed to by Curtis Park and Haynes and Boone at the outset of the Representation, although the rates charged by some of the attorneys and other professionals varied over time in the ordinary course of Haynes and Boone's business. Based on my experience and knowledge, the hourly rates charged by Haynes and Boone and its attorneys and staff are reasonable in light of the rates charged by its peer firms, the specialized knowledge of Haynes and Boone's attorneys related to insurance coverage work for policyholders, the sophisticated and complicated nature of the Curtis Park Lawsuit, and the success that was ultimately obtained.

35. Haynes and Boone is an AmLaw 100 firm and its Insurance Recovery Practice group is Chambers-ranked. Because insurance coverage litigation is a specialized area, especially on the policyholder side, it typically commands higher rates than general litigation. And that is particularly true for complicated insurance cases, like this one, that require specialized counsel from a lawyer with experience litigating coverage cases against insurance companies. In my experience, the rates charged by Haynes and Boone are reasonable and consistent with the rates charged by other lawyers of comparable skill and experience at other AmLaw 100 firms, both nationally and in the Denver market. Indeed, my rate is lower than rates charged by senior partners at other top ranked firms.

Haynes and Boone's other rates for partners and associates are also in line with rates charged by comparable lawyers at other equally ranked firms. Given the stakes and complexity of the matters at issue here, hiring a large law firm with Haynes and Boone's specialized insurance experience was reasonable and appropriate.

36. As support for my opinions above—in addition to my experience practicing in this area—I have attached as Exhibit 1-E two charts of datapoints on attorney's fees from West Publishing/Thomson Reuters' "PeerMonitor" service, a proprietary database of attorney's fee information compiled from and used by many law firms, including Haynes and Boone. Among other things, PeerMonitor gathers the hourly rates charged by other AmLaw 100 firms and organizes that data by attorney seniority, position, geography, and practice area. The fee data itself is confidential, proprietary, and restricted by Haynes and Boone's licensing agreement for the use of PeerMonitor, so the exhibit is being filed under seal. But as the Court will see, the sealed exhibit contains detailed information on standard hourly rates for attorneys in two datasets: (1) insurance coverage lawyers at AmLaw 100 firms nationwide; and (2) litigators at AmLaw100 firms in Denver. These figures further support my opinions that Haynes and Boone's hourly rates are reasonable.

37. As noted above, the rates charged by Haynes and Boone were increased annually in the normal course of business, as is Haynes and Boone's standard practice for other clients. Such increases are reasonable and consistent with practices of other large national law firms and based on my experience, Haynes and Boone actually lags behind other large national firms in rate increases.

38. Haynes and Boone's fees were not contingent on the outcome of the litigation.

**D.  Ultimate Opinions Regarding Curtis Park's Fees.**

39. For all of the reasons outlined above, it is my opinion that the fees charged by Haynes and Boone were reasonable and necessary and that the appropriate lodestar amount of attorney's fees for services rendered to Curtis Park through April 7, 2023, as adjusted above, is $2,767,438.00.

40. Based on the controlling law, I have considered whether an upward or downward adjustment of this lodestar amount is appropriate. I have ultimately decided that no adjustment is necessary or appropriate.

41. In reaching my opinion, I considered the significance of this case to Curtis Park and the other factors addressed *supra* ¶¶ 17, 28. Failure of Curtis Park's claims posed a substantial risk to Curtis Park's ability to enforce its insurance agreements, which are necessary to protect it against accidents and other covered perils. In addition, failing to defeat Allied's misrepresentation defense posed a substantial risk to Curtis Park's reputation over the long term. A bad outcome could have threatened the long-term financial health and reputation of Curtis Park. Accordingly, it was reasonable and necessary for Haynes and Boone to prepare a thorough and diligent prosecution of the Curtis Park Lawsuit.

42. I also considered the complexity of this case, the conduct of Allied during this litigation that increased fees, discussed *supra* ¶ 29, and the success that Curtis Park obtained at trial. Even though an upward adjustment may be appropriate, I am not making such an adjustment. For the same reasons, I do not believe that the circumstances of this case justify decreasing the lodestar amount of Curtis Park's Fees.

### E. Fees for any appeal in the Curtis Park Lawsuit.

43. I have been involved in numerous appeals in federal courts. I am familiar with the complexities of defending an appeal, the amount of time it takes to prepare relevant appellate filings, and the prevailing rates for appellate practitioners.

44. In the event the Curtis Park Lawsuit is appealed, I understand that Curtis Park will seek its appellate attorney's fees following resolution of the appeal. I reserve the right to supplement my opinions on appellate attorney's fees if such fees are incurred.

45. In addition, I reserve the right to supplement this declaration as additional attorney's fees are incurred while the case remains pending before this Court.

46. Haynes and Boone's invoices also contain pass-through charges for out-of-pocket expenses that the firm regularly and customarily bills to clients. In my experience and opinion, those charges were all reasonable and necessary. Curtis Park paid those amounts in the regular course of business, in addition to other costs and expenses of the litigation that were invoiced directly to Curtis Park. Because I understand that Curtis Park will have the opportunity to submit a Bill of Costs following the entry of judgment, I have not specifically addressed any cost issues in this declaration. But I reserve the right to supplement this declaration if that becomes necessary.

I declare under penalty of perjury that the statements herein are true and correct.

Executed on May 9, 2023.

Ernest Martin, Jr.