IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 20-cv-00552-CNS-NRN

CURTIS PARK GROUP, LLC,

    Plaintiff,

v.

ALLIED WORLD SPECIALTY INSURANCE COMPANY,

    Defendant.

## ORDER

Before the Court is Plaintiff Curtis Park Group, LLC's ("Curtis Park's") Motion for Attorney's Fees (ECF No. 323). For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Curtis Park's Motion.

### I. BACKGROUND

The case's factual and procedural background is summarized in the Court's Order regarding Defendant Allied World Specialty Insurance Company's ("Allied World's") post-verdict briefs (*see generally* ECF No. 347). The Court incorporates its summary into this Order, as well as its summary of the case's trial proceedings. As with Allied World's post-verdict motions, the instant, fully briefed fee motion followed the jury's verdict. In its fee motion, Curtis Park seeks an award of $2,767,438 in attorney's fees (*see, e.g.*, ECF No. 323 at 6).[1]

---

[1] Curtis Park also seeks "additional amounts" for fees incurred related to briefing its fee motion and other post-trial motions (ECF No. 323 at 6). This Court addresses this in the Order's Conclusion.

1

## II. LEGAL STANDARD

Prevailing parties on Colorado statutory insurance bad faith claims are entitled to recover "reasonable attorney fees." C.R.S. § 10–3–1116(1); *see also Guarantee Tr. Life Ins. Co. v. Est. of Casper by & through Casper*, 418 P.3d 1163, 1172 (Colo. 2018). Colorado law applies in the Court's analysis of Curtis Park's fee motion. *See US Gen., LLC v. GuideOne Mut. Ins. Co.*, No. 22-1145, 2022 WL 17576353, at *9 (10th Cir. Dec. 12, 2022) (citing *Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1279 (10th Cir. 2011)).[2]

The initial estimate of a "reasonable attorney fee" is reached by calculating the "lodestar" amount. *GuideOne*, 2022 WL 17576353, at *9 (applying lodestar calculation in analyzing reasonableness of attorney fees under § 10–3–1116(1)); *see also Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143, 147 (Colo. App. 1996). The lodestar amount represents the number of hours "reasonably expended multiplied by a reasonable hourly rate" and carries with it "a strong presumption of reasonableness." *GuideOne*, 2022 WL 17576353, at *9 (citing *Tallitsch*, 926 P.2d at 147). After calculating the lodestar, district courts may increase or decrease the fee award "based on the degree of success achieved." *Id.* (citing *Tallitsch*, 926 P.2d at 147); *see also Valdez v. Macdonald*, 66 F.4th 796, 842 (10th Cir. 2023) ("[A] district court may reduce a requested lodestar as one means to compensate for partial success and defects in hours claimed." (citations omitted)).

## III. ANALYSIS

---

[2] On this point, the parties agree (*see* ECF No. 323 at 6; ECF No. 343 at 8). The Court notes that the "Colorado and federal standards for calculating reasonable attorney fees are essentially identical." *US Gen., LLC v. Guideone Mut. Ins. Co.*, No. 18-cv-01256-REB-NRN, 2022 WL 1302360, at *2 (D. Colo. Mar. 30, 2022), *aff'd*, 2022 WL 17576353; *see also id.* (citing Colorado and federal authorities in defining "lodestar" calculation method).

Curtis Park requests $2,767,438 in attorney fees—its own lodestar calculation—on the grounds that it "reasonably billed" 3,952.5 hours related to this case at "reasonably hourly rates" between $350 and $1175 (ECF No. 323 at 9). The Court has considered the parties' briefs, attendant exhibits, the case file, and relevant legal authority. Having done so, and for the reasons set forth below, the Court calculates the lodestar amount at $2,359,506.45.

The Court first addresses the reasonableness of hours expended, and next the reasonableness of Curtis Park's hourly rate. *See, e.g., Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998) ("After determining the number of hours reasonably expended, a reasonable hourly rate must be determined."); *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998).

A. **Hours Reasonably Expended**

Curtis Park contends that all of its time billed and requested was reasonably expended (ECF No. 323 at 9). Allied World advances two arguments in contending that a "portion of Curtis Park's proposed hours are unreasonable" (ECF No. 343 at 16). First, Allied World argues that one category of Curtis Park's bills are "unreasonable" and must be "written off"—Curtis Park's allegedly "unproductive travel time" (*id.*). Second, Allied World argues that sixteen entries inappropriately include block billed travel time (*id.*). The Court largely agrees with Curtis Park that its billed hours were reasonable, with the exceptions identified below (*see* ECF No. 323 at 9).[3]

---

[3] The Court focuses its analysis of Curtis Park's hours on the "portions" that Allied World challenges as unreasonable, and does not address the reasonableness of hours that Allied World does not challenge. *See also Realtime Adaptive Streaming LLC v. Sling TV L.L.C.*, No. 17-cv-02097-RBJ, 2022 WL 4356897, at *3 (D. Colo. Sept. 19, 2022) (including amount of fees to which plaintiff did not object in final fee award).

First, Allied World urges the Court to write off Curtis Park's travel time on the grounds that it is "unproductive" (ECF No. 343 at 16). The Court declines to "write off" *all* the hours claimed in Curtis Park's travel time entries as unreasonable (*see* ECF No. 346 at 12; *see generally* ECF No. 346-1). Nonetheless, the Court concludes that Curtis Park's counsel is not entitled to the entirety of the hours billed for travel time. Other courts have concluded that time spent solely for travel is billable, but only for half of time spent traveling. *See, e.g., Fresquez v. BNSF Ry. Co.*, No. 17-cv-0844-WJM-SKC, 2020 WL 1322920, at *4 (D. Colo. Mar. 20, 2020) (determining that plaintiff's choice to "retain out-of-state counsel was reasonable" and declining to "exclude hours spent traveling to and from Colorado," but finding that recovery for only "half of [counsel's] travel time is appropriate"); *Barbosa v. Nat'l Beef Packing Co.*, LLC, No. CIV.A. 12-2311-KHV, 2015 WL 4920292, at *9 (D. Kan. Aug. 18, 2015) (concluding that "the most reasonable approach is to allow counsel to recover 50 per cent of travel time" and deducting half of time spent traveling). The Court finds this reasoning persuasive. Accordingly, Curtis Park's counsel is entitled to fifty percent of hours spent solely for travel, for a total of 14.35 hours of compensable "standalone" travel time (*cf.* ECF No. 346-1 at 3).[4]

Second, Allied World contends that sixteen entries which include some travel time are inappropriately block billed (ECF No. 343 at 16). "Block billing" refers to the time-keeping method by which lawyers and legal staff enter "the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Harolds Stores, Inc. v. Dillard Dep't Stores,*

---

[4] Curtis Park describes the entries on which the Court bases this calculation as "standalone" travel entries (ECF No. 346 at 12). The Court's calculation includes other entries identified by Allied World solely for travel (ECF No. 343-3 at 16). The Court notes that some of counsel's "standalone" entries include other descriptions of work apparently performed by counsel—for instance, "complet[ing] post-trial matters" and discussions regarding presentations (ECF No. 346 at 12). The Court did not consider these additional descriptions in its analysis, given that Curtis Park defined these entries as "standalone travel entries" (*id.*). The Court takes Curtis Park at its word.

*Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996). Block billing is impermissible where "some of the tasks in a billing entry are compensable and others are not." *Rockhill Ins. Co. v. CFI-Glob. Fisheries Mgmt.*, 591 F. Supp. 3d 1020, 1026 (D. Colo. 2021) (citation omitted). Courts have discretion in determining whether block billing "indicates an unreasonable claim." *BP Pipelines (N. Am.) Inc. v. C.D. Brown Const., Inc.*, 473 F. App'x 818, 835 (10th Cir. 2012) (citation omitted).

Allied World fails to persuade that counsel's hours should be reduced on the basis that certain entries which include travel time and other tasks are inappropriately block billed. For instance, in one entry Allied World identifies, counsel states that Mr. Mabery engaged in meeting preparations with specific individuals, attended and participated in a meeting involving the same, discussed issues raised in this meeting with Mr. Martin, and traveled to Denver (ECF No. 323-3 at 17). An entry from Mr. Martin states that he prepared for a meeting with "Milender White, AWAC, and IMA," traveled to Denver for this meeting, participated in it, and then discussed with clients the case strategy (*id.*). In sum, after carefully reviewing the blocked billed entries that include travel time, they are sufficiently descriptive to adequately convey the work that counsel performed. *See Rockhill*, 591 F. Supp. 3d at 1026 (noting in block billing analysis that fee summaries "adequately convey[ed] the work performed"). Moreover, to the extent the block billed entries include travel time, time spent traveling is compensable, albeit at a reduced rate. *See Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1106 (10th Cir. 2010) ("We have recognized the compensability of necessary travel time, though a trial court has discretion to apply a reduced hourly rate if the time is otherwise unproductive." (citation omitted)); *Barbosa*, 2015 WL 4920292, at *9.

In light of the foregoing, the Court arrives at the following conclusion: counsel's block billed entries that include travel time do not amount to unreasonable claims warranting exclusion from the Court's lodestar calculation, given particularly that all time claimed in the entries is compensable. *See BP Pipelines*, 473 F. App'x at 835; *San Luis Valley Ecosystem Couns. v. U.S. Forest Serv.*, No. CIV.A.04-cv-01071MSK, 2009 WL 792257, at *7 (D. Colo. Mar. 23, 2009) (noting block billing "presents a problem" only when an entry includes non-compensable and compensable tasks and the entry "prevents [a court] from determining and excising the time spent on the non-compensable tasks") (citing *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000). Nonetheless, counsel is not entitled to the entirety of hours claimed in the block billed entries, since the Court has previously concluded that travel time is only compensable at a fifty percent rate.

Averaging the hours counsel identified for entries spent on "standalone" travel time, counsel billed travel time at approximately 3.25 hours from Dallas to Denver and vice versa (*see* ECF No. 346-1 at 2–3). Thus, it is appropriate to: (1) deduct this amount from the block billed entries that include travel time; (2) after doing so, calculate the amount of hours for each entry equal to the total number of block billed hours minus the averaged 3.2 hours of travel time; and (3) award an additional 1.6 hours, which equals roughly fifty percent of the averaged travel time from Dallas to Denver, to the amounts of time in these entries (*id.*). Applying this formula, Curtis Park's counsel is entitled to a total of 86.9 hours of compensable time from its block billed entries that include travel time (*see* ECF No. 346-1 at 2–3).

In sum, and for the reasons set forth above, of the 141.1 hours that Curtis Park identifies as "time entries related to travel," 101.25 are compensable.

### B.  Reasonable Hourly Rate

The parties' dispute centers largely on Curtis Park's hourly rates (*compare* ECF No. 323 at 13, *and* ECF No. 346 at 5, *with* ECF No. 343 at 8). As explained further below, the Court agrees with Allied World that a reduction of Curtis Park's hourly rates is warranted, but not to the extent urged by Allied World.

In calculating a party's lodestar, a "reasonable" hourly rate is defined as the "prevailing market rate in the relevant community." *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (quotation omitted); *see also Ellis*, 163 F.3d at 1203 (defining the "market rate" as "the price that is customarily paid in the community for services like those involved in the case at hand." (quotations omitted)). The party requesting fees must provide sufficient evidence, in addition to attorney affidavits, of the "prevailing market rate for similar services" by "lawyers of reasonably comparable skill, experience, and reputation in the relevant community." *Id.* (quotation omitted); *see also Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Further, the party requesting fees bears the burden of showing that its requested rates are in line with "those prevailing in the community." *Ellis*, 163 F.3d at 1203 (quotation omitted).

Curtis Park essentially contends that the range of hourly rates charged in his case were reasonable because: (1) its attorneys and non-attorney staff were qualified to render their legal services to Curtis Park; (2) this case presented a "complex insurance dispute;" (3) and its expert, Christopher Mosley, a partner in the Denver office of Foley Hoag LLP, demonstrates that its requested hourly rates are reasonable and in line with prevailing rates in the community (ECF No. 323 at 13–15).

The Court agrees with Allied World, however, that Curtis Park's requested rates are excessive (ECF No. 343 at 8). Certainly, Curtis Park's attorneys and non-attorney staff were qualified to render legal services in this case (*see* ECF No. 323 at 13). But as Allied World observes, the Court's focus is on the rates for attorneys in the Denver legal community (*see* ECF No. 343 at 8). *See also Ellis*, 163 F.3d at 1203 (stating that the "relevant community is Kansas City, Kansas" in analysis of counsel's reasonable hourly rate); *Digital Satellite Connections, LLC v. Dish Network Corp.*, No. 13-cv-02934-REB, 2018 WL 4620337, at *4 (D. Colo. Sept. 26, 2018) (concluding that a reasonable hourly rate "must be determined based on the prevailing market rate for type of legal work at issue in the relevant market of Denver, Colorado"). And focusing on hourly rates in the Denver legal market—the relevant community in the Court's analysis—Curtis Park's requested hourly rates are excessive.

For example, even considering the competency and experience of Curtis Park's attorneys and non-attorney staff, Jeremy A. Sitcoff—Allied World's "expert" and a partner at the law firm of Levin Sitcoff Waneka PC, who has been admitted to practice law in Colorado since 1998 and whose practice has included a focus on commercial litigation, including insurance coverage and bad faith matters—stated that in light of his extensive experience Curtis Park's requested hourly rates for its attorneys and non-attorney professionals, with the exception of Mr. Mabery, were "above the prevailing market rates for the Denver legal market" (ECF No. 343-2 at 3, 8, 11–15). In addition to his extensive experience, Mr. Sitcoff cited published surveys to support his conclusion, but more importantly, he cited several § 10–3–1116 cases regarding fee awards decided within the past three years in this District (*id.* at 9). Even assigning reduced weight to the persuasiveness of the CBA surveys, combined with the caselaw cited in his declaration and

8

decades of his professional experience, the Court finds that Mr. Sitcoff's opinions regarding the excessiveness of Curtis Park's requested hourly rates persuasive (*id.*). *See also O'Rourke v. Dominion Voting Sys. Inc.*, 571 F. Supp. 3d 1190, 1197 (D. Colo. 2021), *aff'd*, No. 21-1442, 2022 WL 17588344 (10th Cir. Dec. 13, 2022) (noting that some judges in this District have "questioned" the "utility" of the CBA Economics of Law Practice Survey).

In contrast, Mr. Mosley's stated that national rates for insurance coverage partners "in the AmLaw 100 have an average billable rate in excess of $1,000 per hour," which he contends "is consistent with commercial litigation rates in Denver" (ECF No. 323-8 at 14). These statements fail to persuade that Curtis Park's requested rates are reasonable—particularly in light of the evidence supporting Mr. Sitcoff's contrary conclusions, as well as the absence of persuasive evidence offered by Curtis Park that its requested rates are in line with the prevailing market rate in the Denver legal community. *See Lippoldt*, 468 F.3d at 1224.[5] Accordingly, the Court agrees with Mr. Sitcoff and Allied World that Curtis Park's requested rates are excessive. *See also United States v. $114,700.00 in United States Currency*, No. 20-1387, 2023 WL 142257, at *4 (10th Cir.

---

[5] Tellingly, Mr. Mosley's conclusion is supported by his encounters with "commercial policyholder specialists *across the country*" (ECF No. 323-8 at 14 (emphasis added)). Assuming, as Mr. Mosley states, that the Court should focus on rates consistent for "complex commercial litigation generally," the Court disagrees with Curtis Park that rates for complex commercial litigation in the Denver legal community justify awarding it fees at its requested hourly rates— especially given relevant caselaw discussed below, and the evidence that Allied World offers in its Response (*id.*). And although Mr. Mosley states that Curtis Park's attorneys and non-attorney staff hail from an AmLaw 100 firm with an office in Denver, this does not automatically justify the imposition of hourly rates that exceed those charged in the Denver legal *community*—or indicate that counsel's rates align with those in the Denver legal community— especially when market evidence before the Court demonstrates otherwise (ECF No. 323-8 at 13). At bottom, Curtis Park's repeated emphasis on its counsel's status as an AmLaw 100 firm does not make its requested hourly rates reasonable (*id.*; *see also* ECF No. 323-1 at 21). Nor does Curtis Park's contention that this case presents a circumstance "command[ing] top market, national rates" based on the notion that a commercial insurance dispute is a "niche practice," especially where Mr. Mosley elsewhere states that the Court, in setting Curtis Park's reasonable hourly rates, should look to the rates for general commercial litigation in the Denver legal community (ECF No. 323 at 15; ECF No. 323-8 at 14; ECF No. 343 at 13). *See also Digital Satellite Connections,* 2018 WL 4620337, at *4 (disagreeing that "case had a tenor of such nationwide import" where it involved "questions about the rights of the parties under two contracts," and therefore that although the case was a "fairly complex commercial contract dispute" that the prevailing market rate was "the relevant market of Denver, Colorado").

Jan. 10, 2023) (concluding that district court did not abuse its discretion by relying on the opinion of opposing expert over the expert of party requesting fees in reducing counsel's requested hourly rate). And although not dispositive in the Court's analysis of Curtis Park's requested hourly rates, recent cases concerning § 10–3–1116 claims cited by Allied World and Mr. Sitcoff—in which courts have approved lower rates than those requested here—bolster the Court's conclusion that Curtis Park's requested rates are excessive (ECF No. 343 at 9; ECF No. 343-2 at 9). *See also GuideOne*, 2022 WL 17576353, at *10 n.5.

\* \* \*

For the reasons set forth above, the Court concludes that Curtis Park's requested hourly rates are excessive because they exceed the prevailing market rate for similar services in the Denver, Colorado, legal community by attorneys of reasonable skill and experience. *See, e.g., Lippoldt*, 468 F.3d at 1224. In sum, Curtis Park has failed to meet its burden of showing that its requested hourly rates are reasonable. *Ellis*, 163 F.3d at 1203. In reaching this conclusion, the Court has considered market evidence submitted by the parties, including the declarations of Messrs. Martin, Mosley, and Sticoff.

In light of the foregoing, the Court must now determine the reasonable hourly rates of the attorneys and non-attorney members for whom Curtis Park seeks attorney fees. The Court's determination is guided by the market evidence before it, including the above-mentioned declarations. *See Case*, 157 F.3d at 1256 (stating that district courts must award rates "compatible with competent, trustworthy evidence of the market," and that market evidence "includes affidavits submitted by the parties"). Based on this market evidence, the Court may in its discretion reduce Curtis Park's requested hourly rates. *See, e.g., Lippoldt*, 468 F.3d at 1225.

To be sure, Curtis Park's proposed rates are excessive. Nonetheless, the Court must consider the comparable skill, experience, and reputation of lawyers in the Denver legal community to Curtis Park's attorneys and non-attorney staff. *See, e.g., Ellis*, 163 F.3d at 1203. And in doing so, reducing Curtis Park's fees to the degree suggested by Allied World is inappropriate. Even focusing on rates for general commercial litigation in the relevant legal community, and without assigning undue weight to Curtis Park's arguments that it is entitled to its fees as requested based on its status as an AmLaw 100 firm, evidence before the Court demonstrates that Curtis Park's attorneys and non-attorney staff have excellent skills, experience, and reputations (*see, e.g.,* ECF No. 323-8 at 23–27). Moreover, even though this insurance dispute case did not rise to the level of a "niche practice," it certainly was a complex insurance dispute with high stakes, as both parties have acknowledged (ECF No. 323 at 15; *see also* ECF No. 323 at 4; ECF No. 343 at 9; ECF No. 346 at 7). *See also Biax Corp. v. NVIDIA Corp.*, No. 09-cv-01257-PAB-MEH, 2013 WL 4051908, at *7 (D. Colo. Aug. 12, 2013) (determining rates at "top of applicable range" were not unreasonable, and emphasizing the "complexity of the subject matter, the high stakes of the case, and the contentiousness of the dispute" in reaching this determination); *Stenson v. Edmonds*, No. 1:18-cv-01968-JLK-STV, 2021 WL 7400721, at *4 (D. Colo. May 21, 2021) (determining that rates were on the "high end of rates charged in Denver" but that rates were reasonable "considering the attorneys' skill, experience, and reputation").

Accordingly, after considering all the evidence before the Court, the Court concludes that the hourly rates for Curtis Park's attorneys and non-attorney staff set forth below are in line with

11

rates prevailing in the legal community of Denver, Colorado. *Ellis*, 163 F.3d at 1203; *Biax*, 2013 WL 4051908, at *7. *Cf.* ECF No. 323-8 at 19.[6]

| Attorney or Non-Attorney Staff | Reasonable Hourly Rate |
|---|---|
| Ernest Martin | $940 |
| Andrew Guthrie | $760 |
| Emily Buchanan | $500 |
| Kathleen Repko | $584 |
| Daniel Mabery | $587.50 |
| Rae Guyse | $400 |
| Casey McGovern | $235 |
| DiAnna Gaeta | $225 |
| Michael Brockwell | $225 |

### C. Lodestar Adjustments

Allied World argues that Curtis Park's lodestar should be reduced for two reasons: because Curtis Park engaged in block billing and impermissible redactions, and because Curtis Park misrepresented the involvement of Pat Casey throughout this litigation (ECF No. 343 at 17). *See also Valdez*, 66 F.4th at 842 ("[A] district court may reduce a requested lodestar as one means to compensate for partial success and defects in hours claimed." (citations omitted)); *Payan v. Nash Finch Co.*, 310 P.3d 212, 222 (Colo. App. 2012). The Court rejects Allied World's arguments.

---

[6] The Court provides a final lodestar calculation below, after addressing the parties' remaining arguments regarding adjustments to Curtis Park's lodestar.

12

***Block Billing & Redactions.*** Allied World argues that the lodestar should be reduced by 20% because counsel's invoices were "uniformly block billed and contained extensive redactions" (ECF No. 343 at 17). The gravamen of Allied World's argument is that the time records in this case were imprecise, and fail to adequately document the time spent by attorneys and non-attorney staff on billed tasks (*id.* at 18). The Court disagrees. The Court has reviewed the time sheets submitted by counsel. They are not impermissibly block billed, and any redactions do not make it impossible for the Court to deduce the tasks that attorneys and non-attorney staff completed. For example, in one entry identified by Allied World, although the entry contains redacted information, it adequately conveys the work performed by Curtis Park's attorneys (ECF No. 323-4 at 75). *See Rockhill*, 591 F. Supp. 3d at 1026 (noting in block billing analysis that fee summaries "adequately convey[ed] the work performed"); *cf. Casias v. Raytheon Co.*, No. 17-cv-02635-REB-SKC, 2021 WL 2345604, at *3 (D. Colo. June 2, 2021), *aff'd*, No. 21-1195, 2022 WL 2824256 (10th Cir. July 20, 2022) ("[A]ll counsels' entries are block-billed, a practice which, while not prohibited, makes it *practically impossible* to decipher allowable from unallowable time." (citation omitted)). At bottom, there is nothing unreasonable about the time entries Allied World identifies warranting a 20% reduction in the lodestar, or indicates that counsel exercised inappropriate billing judgment. *See BP Pipelines*, 473 F. App'x at 835.

***Pat Casey's Involvement.*** Allied World contends that a 10% lodestar reduction is warranted because Curtis Park misrepresented the participation of Pat Casey in this litigation (ECF No. 343 at 18). Curtis Park argues that a 10% reduction is not warranted on this basis, because its fee is based on its "well-disclosed, ongoing relationship with Pat Casey" (ECF No. 346 at 13). The

Court agrees with Curtis Park that a 10% lodestar reduction is not warranted based on Pat Casey's involvement in this litigation.

Allied World essentially argues that despite the "repeated insistence" that Mr. Casey was not working on this case, his name inappropriately appears on many invoices, amounting to $140,000 in fees (ECF No. 343 at 19).[7] But the Court disagrees with Allied World that Curtis Park engaged the misconduct, as alleged in Allied World's Response, that warrants a 10% lodestar reduction (*id.* at 19–20). Allied World fails to persuade, based on the case file and evidentiary record, that Curtis Park impermissibly "hid" Pat Casey's involvement at various stages of litigation (ECF No. 346 at 13; *see also* ECF No. 343-3; ECF No. 346 at 14). And notably, as Allied World states, Curtis Park does not seek to recover fees for Mr. Casey's time (ECF No. 343 at 19 n.14). Therefore, the Court declines to exercise its discretion and reduce Curtis Park's lodestar by 10%, since the Court discerns no defects in the hours claimed by Curtis Park's counsel related to Pat Casey's involvement in this case, given especially that no hours are claimed or billed for Mr. Casey's time. *See, e.g., Valdez*, 66 F.4th at 842.

\* \* \*

Curtis Park is entitled to a lodestar amount consistent with the hours expended and hourly rates set forth above. In light of the foregoing, the Court calculates Curtis Park's lodestar as follows, mindful of its adjustments to Curtis Park's claimed hours related to travel time:

---

[7] Allied World notes that the invoices "do not bill for Mr. Casey's time," instead that they billed for counsel's time "spent working" with him "on the coverage portion of this case" (ECF No. 343 at 19 n.14).

| Attorney or Non-Attorney Staff | Reasonable Hours Expended | Reasonable Hourly Rate | Total Fees |
|---|---|---|---|
| Ernest Martin | 655.5 | $940 | $616,170.00 |
| Andrew Guthrie | 225.6 | $760 | $171,456.00 |
| Emily Buchanan | 1,119.65 | $500 | $559,825.00 |
| Kathleen Repko | 1,371.8 | $584 | $801,131.20 |
| Daniel Mabery | 228.7 | $587.50 | $134,361.25 |
| Rae Guyse | 33.7 | $400 | $13,480.00 |
| Casey McGovern | 44.3 | $235 | $10,410.50 |
| DiAnna Gaeta | 102.7 | $225 | $23,107.50 |
| Michael Brockwell | 131.4 | $225 | $29,565.00 |

Accordingly, Curtis Park's lodestar amount equals: $2,359,506.45

## IV. CONCLUSION

Consistent with the above analysis, the Court GRANTS IN PART and DENIES IN PART Curtis Park's Motion for Attorney's Fees (ECF No. 323). Pursuant to C.R.S. § 10–3–1116, Curtis Park is AWARDED $2,359,506.45 in reasonable attorney fees. Within seven days of this Order, the parties are directed to confer in light of this Order regarding any fees Curtis Park seeks for the instant motion and fees for any other post-trial motions. If the parties agree after conferral on Curtis Park's fees for the instant motion and any other post-trial motions, they shall file a joint statement regarding their fee agreement. After conferral, if the parties have reached no agreement regarding Curtis Park's fees for the instant motion and any other post-trial motions, Curtis Park shall file a supplemental motion for attorney's fees regarding any fees it has incurred related to briefing the

instant motion, and any other post-trial motions, within seven days of the parties' conferral. Allied World shall file a response within seven days of Curtis Park's supplemental motion. Curtis Park shall file no reply brief. The Court shall enter an amended judgment after issuing an Order ruling on Curtis Park's supplemental fee motion, should Curtis Park file one following the parties' conferral.

DATED this 31st day of August 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge